Patrick J. Perotti, Esq.
Frank A. Bartela, Esq.
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
Tel: (440) 352-3391
Fax : (440) 352-3469
*pperotti@dworkenlaw.com*
*fbartela@dworkenlaw.com*

Kristen Law Sagafi (SBN 222249)
Martin D. Quiñones (SBN 293318)
**TYCKO & ZAVAREEI LLP**
483 Ninth Street, Suite 200
Oakland, CA 94607
Tel.: (510) 254-6808
Fax: (202) 973-0950
*ksagafi@tzlegal.com*
*mquinones@tzlegal.com*

Hassan A. Zavareei (SBN 181547)
**TYCKO & ZAVAREEI LLP**
2000 L Street, N.W., Suite 808
Washington, DC 20036
Tel.: (202) 973-0900
Fax: (202) 973-0950
*hzavareei@tzlegal.com*

*Attorneys for Plaintiff*
*Colin R. Brickman*

UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLIN R. BRICKMAN, individually and on behalf of a class of similarly situated individuals<br><br><br>*Plaintiff*,<br><br>vs.<br><br>FACEBOOK, INC.<br><br>*Defendant*. | CASE NO.<br><br>JUDGE<br><br>**CLASS ACTION COMPLAINT** |

Now comes Plaintiff Colin R. Brickman, individually and as a representative of all others similarly situated, and for his Class Action Complaint states:

## INTRODUCTION

1.      This is a class action brought by Colin R. Brickman ("Plaintiff"), individually and on behalf of all others similarly situated, against Facebook, Inc. ("Defendant" and/or "Facebook") to stop Facebook's practice of transmitting unsolicited text messages containing birthday announcements (hereinafter "Birthday Announcement Texts") to consumers' cellular telephones, and to obtain redress for all persons injured by its conduct. Facebook's unsolicited and unauthorized Birthday Announcement Texts state: "Today is [Facebook friend's] birthday. Reply to post a wish on his Timeline or reply with 1 to post "Happy Birthday!"

2.      As detailed below, the Notification Settings in Plaintiff's Facebook account clearly indicate that Plaintiff expressly did not and does not consent to receive text messages of any kind from Facebook. Plaintiff's account settings sent and continue to send a clear and affirmative message to Facebook that he did not and does not want to receive any texts from Facebook. Despite Plaintiff's express lack of consent, Facebook sent Birthday Announcement Texts to Plaintiff's phone in violation of the Telephone Consumer Protection Act, 47 USC § 227 (the "TCPA"), which protects the privacy rights of individuals to be free from receiving unwanted text message spam on their cellular phones.

3.      Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, based on the investigation conducted by his attorneys.

## NATURE OF THE ACTION

4.      Facebook operates the online social networking service, Facebook.com. There are more than 156 million Facebook users in the United States, and more than 2 billion worldwide. In an effort to increase user traffic, which in turn drives Facebook's advertising revenue, Facebook violated federal law by sending unauthorized Birthday Announcement Texts to cellular telephones of individuals throughout the United States.

5.      By effectuating these unauthorized text messages, Facebook has violated

individuals' statutory and privacy rights and caused actual harm, not only because individuals were subjected to the aggravation and invasion of privacy that necessarily accompanies unwanted text messages, but also because individuals frequently pay their cell phone service providers for the receipt of such unwanted texts.

6.     To redress these injuries, Plaintiff, on behalf of himself and a nationwide class, brings this class action under TCPA.

7.     The TCPA exists to prevent communications like the ones described within this complaint.  "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

8.     When it passed the TCPA, Congress intended to provide consumers a choice as to how telemarketers may contact them and found that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer."  Pub. L. No. 102–243, § 11.  Congress also found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance . . . " *Id.* at §§ 12-13.

9.     The TCPA's ban on telephone calls made using an automatic telephone dialing system ("ATDS" or "autodialer"), as defined by 47 U.S.C. § 227(a)(1), has been interpreted to extend to unsolicited autodialed text messages sent to cellular phones.  *E.g.*, FCC Declaratory Ruling, 27 F.C.C.R. 15391, 2012 WL 5986338 (Nov. 29, 2012); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014); *Gager v. Dell Fin. Servs., Inc.*, 727 F.3d 265, 269 n.2 (7th Cir. 2013).

10.     On behalf of himself and the Class, Plaintiff seeks an injunction requiring Facebook to stop sending Birthday Announcement Texts to users without their consent and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## **PARTIES**

11.     Plaintiff Colin R. Brickman is an individual and resident of the State of Florida,

County of Hernando, and City of Spring Hill.

12.     Defendant Facebook, Inc. is a corporation organized under the laws of California and headquartered in Menlo Park, CA, which is located in San Mateo County. Defendant owns and operates the website www.facebook.com.

## JURISDICTION & VENUE

13.     This Court has federal question jurisdiction over this matter under 28 U.S.C. §1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

14.     Because a substantial portion of the events giving rise to the present claim occurred in this District, venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

15.     Venue is proper in the San Francisco Division Pursuant to Local Rule 3-2(d) because this action arises in San Mateo County, where Facebook maintains its headquarters.

16.     Moreover, Section 15 of Facebook's Statement of Rights and Responsibilities, available at https://www.facebook.com/legal/terms, includes a choice of venue provision selecting the Northern District of California for civil actions.

## FACTS

17.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

18.     Facebook does not own factories, physical product inventory, or saleable goods, yet, as of June, 2015, Facebook was worth more than Wal-Mart. http://money.cnn.com/2015/06/23/investing/facebook-walmart-market-value/.

19.     The value of Facebook is based on advertising and customer use of its platform. Customer use is generated by advertising and other systems which promote user contact with the platform through "likes," posts, messages, and other interaction.

20.     In its investment publications, Facebook defines each time a user engages on the Facebook platform as a "revenue-generating activity." *See* investor.fb.com and Facebook's Q3 2015 Results (available at http://edge.media-server.com/m/p/6566ox3f and/or

1    http://files.shareholder.com/downloads/AMDA-NJ5DZ/1402550631x0x859098/DC6C9112-

2    AFF6-4E76-9168-7DBA0D5FFDAB/FB_Q3_15_Earnings_Slides_FINAL.pdf).

3         21.    In other words, Facebook earns revenue when its users interact with the website.

4    Thus, any invitation to post a message on Facebook is meant to promote Facebook's service and

5    entice users to take an action that results in financial benefit to Facebook.

6         22.    Short Message Services (SMS) is a service provided to cellular telephone

7    subscribers that allows them to use their cell phones to send and receive alpha-numeric messages.

8    These messages are commonly called text messages.

9         23.    When a text message is sent to a cellular phone, the recipient's cellular phone

10   alerts that a text message call is being received. As cellular phones are inherently mobile and are

11   frequently carried on their owner's person, calls to cellular phones, including text messages, may

12   be received by the called party virtually anywhere worldwide.

13        24.    Many companies, including Defendant, have taken advantage of this technology to

14   send out unsolicited text messages to thousands of consumers at a time, typically through

15   "autodialing" systems.

16        25.    The Federal Communications Commission ("FCC") has stated that not only are

17   such unsolicited messages "annoying and time-consuming," they "can be intrusive and costly."

18   (FCC Guide, Spam: Unwanted Text Messages and Email, available at

19   http://www.fcc.gov/guides/spam-unwanted-text-messages-and-email [last accessed July 17,

20   2014].)

21        26.    Congress passed the TCPA to make it illegal to send autodialed, artificial, or

22   prerecorded messages without prior express consent. 47 U.S.C. §227 et seq. The TCPA expressly

23   prohibits the use of an automatic telephone dialing system ("ATDS") and/or an artificial or

24   prerecorded message to call any telephone number assigned to a cellular telephone service, absent

25   an emergency purpose (inapplicable in the present case) or absent Defendant obtaining the prior

26   express consent of the called party.

27        27.    Moreover, the FCC has set an even higher standard for consent with regard to

28   telemarketing messages. Specifically, the FCC has held that it is unlawful to send autodialed or

prerecorded calls that include or introduce an advertisement or calls that constitute *telemarketing* messages, absent prior express *written* consent of the called—or in this case, texted—party. 47 CFR 64.1200(a)(2).

28.     The FCC has defined telemarketing as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 CFR 64.1200(f)(12).

29.     Furthermore, The FCC has stated that telemarketing occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services. 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); 18 FCC Rcd 14014,14098 ¶141. (FCC 2003).

30.     Text messages are covered under these prohibitions of the TCPA. *See generally In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,CG Docket No. 02-278, GCC File No. 12-143, p. 7 (Nov. 29, 2012); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

31.     Text messages are not a recorded message or a human voice caller, but in this case they are automated, autodialed messages to a cell phone. They are now one of the most prevalent forms of spam addressed by the TCPA.

**A.      Defendant's Bulk Text Messaging Campaign**

32.     As an ordinary business practice, Facebook collects mobile phone numbers from many of its users. Even if users do not supply their cellular telephone numbers to Facebook, Facebook on its own gathers information from users who access its service, including users' cellular telephone numbers.

33.     Defendant has used and continues to use an autodialed bulk campaign to send thousands of unsolicited Birthday Announcement Texts to consumers like Plaintiff Colin R. Brickman.

34.     Pursuant to the TCPA, Facebook may not send unsolicited text messages to its users without their prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). Furthermore, Facebook may not send *telemarketing* text messages to users' cellular phone numbers without prior express

*written* consent. 47 CFR 64.1200(a)(2)

35.     At all times relevant, Plaintiff has expressly indicated in the Notification Settings of his Facebook account that he did not and does not consent to receive any text messages from Facebook, including the Birthday Announcement Texts. Thus, Facebook lacked the prior express consent required by the TCPA to send a Birthday Announcement Text to Plaintiff, regardless of whether the Birthday Announcement Text is telemarketing or not.

36.     If the Birthday Announcement Texts are telemarketing (and Plaintiff alleges that they are), Facebook was required to secure express *written* consent from the Plaintiff and others like him before sending the Birthday Announcement Texts to their phones.

37.     The unsolicited Birthday Announcement Texts that Facebook sent to Plaintiff Brickman and other users are telemarketing messages because they promote Facebook's product, encourage users to invest time using Facebook's social networking service, and urge user interaction with the Facebook platform—activity that Facebook itself has defined as "revenue-generating activity." Thus, Facebook is required to secure prior express *written* consent of the called—or in this case, texted—party. 47 CFR 64.1200(a)(2).

38.     Plaintiff did not provide express written consent. Indeed, he provided the *opposite* of express written consent when he affirmatively indicated to Facebook that he did *not* want to receive any texts from Facebook.

39.     Even assuming that the Birthday Announcement Texts are merely information (as opposed to telemarketing), Facebook *still* did not have the required consent to send Plaintiff and the Class these text messages. Given that Plaintiff affirmatively indicated to Facebook that he did not want to receive *any* texts from Facebook, Facebook lacked the requisite prior express consent to send the Birthday Announcement Texts.

### B.      Defendant's Disregard for Users' Consent

40.     Plaintiff brings this lawsuit on behalf of himself and other users who did not and do not consent to receive Birthday Announcement Texts from Facebook but received them anyway.

41.     Presumably in recognition of the need for express prior written consent, Facebook has created fields and settings that allow users to specifically define when, if ever, Facebook is authorized to send text messages to their phones.

42.     Whether a user has consented to receive Birthday Announcement Texts is evident from the user's Notification Settings in the user's Facebook account.

43.     A user's lack of consent is evinced by any of three distinct settings in the user's Notification Settings.

44.     The first way a user can indicate lack of consent to receive text messages is to simply not "activate" his or her phone number for texting.

45.     Under Facebook's standard Notification Settings, there is section called "Text message" whereby Facebook users can authorize Facebook to send text messages to the provided phone number.

46.     If a user simply does not activate his or her phone number for texting, the user's Notification Settings reflect this and state that "[t]o get these notifications, you need to activate text messaging." The screenshot below is taken from Plaintiff Brickman's Facebook account and clearly indicates that Plaintiff did *not* activate text messaging for his cell phone:



47.     When a user chooses not to activate text messaging, that user has affirmatively NOT consented to receive text messages of any kind from Facebook.

48.     That lack of consent to receive text messages from Facebook is further demonstrated by the webpage that becomes visible by clicking the hyperlinked language "activate text messaging." If one clicks the hyperlink, the following page, also taken from Plaintiff's Facebook account, appears:



49.     The page shown above unambiguously states that Plaintiff's "registered phone is not activated for text messaging." Thus, Facebook knew or should have known that Plaintiff did not authorize Facebook to send him text messages of any kind.

50.     Facebook is aware that if a user never "activated [their phone] for text messaging", Facebook lacks the user's consent to send him or her autodialed text messages of any type.

51.     Despite this lack of consent, Facebook sent and continues to send Birthday Announcement Texts to Plaintiff and users who never activated their phones for text messaging and, therefore, never consented to receive these texts.

52.     The second way a user can indicate a lack of consent is by selecting "Off" in the Notification Settings with regard to text messages, as shown here:



53.     In this circumstance, the user has affirmatively NOT consented to receive text messages of any kind from Facebook.

54.     Facebook is aware that if a user has selected "Off" in the Notification Settings with regard to text messages, Facebook lacks the user's consent to send him or her autodialed text messages of any type.

55.     Despite this lack of consent, Facebook unlawfully sent and continues to send Birthday Announcement Texts to users who have selected "Off" and have not consented to receive these texts.

56.     The third way a user can indicate a lack of consent to receive Birthday Announcement Texts is to expressly opt out of receiving certain types of text messages from Facebook.

57.     Users who select "On" in the Notification Settings with regard to text messages may nonetheless limit their consent to certain types of text messages. When a user selects "On" for text notifications, he or she is presented with three checkboxes, which may be used to indicate the type of texts the user consents to receive from Facebook. The three check boxes are visible in the screenshot below:

58.     As shown in the screenshot directly above, users may consent to receive any of three categories of text messages from Facebook: (1) "Comments on your status updates or on posts to your timeline," (2) "Friend requests or confirmations via SMS," or (3) "All other SMS notifications."

59.     Facebook is aware that it lacks the user's consent to send a text in any category of text message for which the user has left the box "unchecked" in the Notification Settings.

60.     Specifically, Facebook is aware that if a user has not checked box three (3) indicating consent to receive "All other SMS notifications", Facebook does not have a user's consent to send him or her the Birthday Announcement Text at issue in this case.

61.     Despite this lack of consent, Facebook unlawfully sent and continues to send Birthday Announcement Texts to users for whom box three (3) "All other SMS notifications" is or was unchecked at the time Facebook sent or sends the Birthday Announcement Text.

62.     In each and every one of the three circumstances described above, whereby a user expressly indicates lack of consent, Facebook sent and continues to send Birthday Announcement Texts in violation of the TCPA.

63.     Facebook has the records for which type of texts, if any, each and every registered user has consented to receive from Facebook. Thus, Facebook is aware of what type of text messages, if any, it has authority to send to each of its users.

64.     Despite Plaintiff's and Class members' unambiguous lack of consent, Facebook sent unlawful, autodialed commercial texts stating: "Today is [Facebook friend's] birthday. Reply

to post a wish on his Timeline or reply with 1 to post 'Happy Birthday!' " to Plaintiff and thousands of other non-consenting users.

65.    An example of the Birthday Announcement Text message is seen in the following screenshot:



66.    Based upon the nature of the Birthday Announcement Text (impersonal, generic, and sent from a SMS short code), Plaintiff alleges that Defendant uses ATDS and software to generate the content of these spam texts, as well as to send these texts to Plaintiff and the Class.

67.    Defendant has assembled lists of consumer cell phone numbers, gathered through users' Facebook profiles and other means. Facebook has used those cell phone numbers for the purpose of sending autodialed text message calls, without regard to the lack of consent reflected in users' notification or mobile settings.

68.    The purpose of the unsolicited text messages is clear: financial benefit for Facebook.

69.    Facebook engages in marketing to promote their product and cause people to interact with the Facebook website, and each interaction a user has with the Facebook website has a commercial value to Facebook.

70.    In the case of the Birthday Announcement Text scheme, Facebook engaged in a widespread marketing campaign to increase revenue by generating more interactions with its

platform.

71.     Facebook sent bulk and impersonal text messages by an autodialer to cell phones like Plaintiff's, using standard response prompts. Every prompt solicits the receiver to engage on Facebook.

72.     This lawsuit is for the thousands of persons who did NOT give Facebook prior express consent—written or otherwise—but to whom Defendant nevertheless sent the Birthday Announcement Text.

## PLAINTIFF'S TEXT MESSAGES

73.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

74.     At all times relevant, Plaintiff has been the primary and regular user of the cell phone number (813) 846-4936.

75.     Plaintiff supplied Facebook the phone number (813) 846-4936, which is now associated with his Facebook page, https://www.facebook.com/colin.brickman.56.

76.     Although Plaintiff supplied a cell phone number to Facebook, he expressly did *not* consent to receive text messages from Facebook. Plaintiff's unambiguous lack of consent is evidenced by the settings on his personal Facebook page, illustrated in the screenshots at ¶¶ 46-48, above.

77.     As shown above, the Notifications and Settings page associated with Plaintiff's Facebook account reflects that Plaintiff has not "activate[d] text messaging." Unless and until Plaintiff activates text messaging and chooses which, if any, types of text messages he consents to receive, Facebook has no authority to send text messages of any kind to Plaintiff.

78.     Plaintiffs' lack of consent to receive text messages from Facebook is further demonstrated by the webpage that becomes visible by clicking the hyperlinked language "activate text messaging." See ¶ 46, above.

79.     The page that appears upon clicking the hyperlinked language states unambiguously that Plaintiff's "registered phone is not activated for text messaging." See ¶ 48, above.

80.     Thus, Facebook knew or should have known that Plaintiff did not authorize Facebook to send him text messages of any kind.

81.     Despite Facebook's knowledge that Plaintiff did not consent to receive text messages, on or about December 15, 2015, Facebook, through its short code SMS number 32665033, texted Plaintiff's cell phone with an unsolicited text message (the Birthday Announcement Text) stating "Today is Jim Stewart's birthday. Reply to post a wish on his Timeline or reply with 1 to post 'Happy Birthday!'"

82.     Again, at no point did Plaintiff consent to receive this—or any—unsolicited text message from Facebook.

83.     The Birthday Announcement Text that Plaintiff received on December 15, 2015 is a non-emergency text message.

84.     Facebook sent the Birthday Announcement Text to Plaintiff using an automatic telephone dialing system.

85.     Facebook has sent, and continues to send, thousands of unsolicited autodialed telemarketing Birthday Announcement Texts to customers who have not provided consent—or otherwise—to Facebook, all in violation of the TCPA.

## CLASS ALLEGATIONS

86.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

87.     Plaintiff brings this action on behalf of himself and a Class of all other similarly situated persons (hereinafter referred to as the "Class" and/or "Class members"), defined as follows:

> All individuals who received one or more Birthday Announcement Texts from Defendant to a cellular telephone through the use of an automatic telephone dialing system at any time without their consent.

88.     The Class numbers over one hundred (100) persons and is so numerous that joinder of all members is impracticable, and it is further impracticable to bring all such persons

before this Court.

89.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, without limitation:

    a.    Whether Defendant sent non-emergency text messages to Plaintiff and the Class members' cellular telephones;

    b.     Whether Defendant and/or its agents used an automatic telephone dialing system to transmit the unsolicited Birthday Announcement Texts;

    c.    Whether Defendant and/or its agents transmitted the Birthday Announcement Texts to persons who did not provide express consent– written or otherwise;

    d.    Whether the Birthday Announcement Texts distributed by the Defendant and/or its agents violate the TCPA;

    e.    Whether Defendant's conduct was knowing and/or willful;

    f.    Whether Defendant is liable for damages, and the amount of such damages; and

    g.    Whether Defendant should be enjoined from engaging in such conduct in the future.

90.     Defendant has engaged in the same conduct regarding all members of the Class asserted in this suit.

91.     The claims, defenses, and injuries of the representative Plaintiff are typical of the claims, defenses, and injuries of all those in the Class he represents, and the claims, defenses, and injuries of each Class member are typical of those of all other members in the Class.  Like all proposed members of the Class, Plaintiff received one or more unsolicited Birthday Announcement Texts, which Facebook sent using an automatic telephone dialing system and/or an artificial or prerecorded voice, without his consent, in violation of 47 U.S.C. § 227.  Plaintiff and all members of the Class have been similarly affected by Defendant's unlawful actions.

92.     The representative Plaintiff will fully and adequately protect and represent the entire Class, and all of its members.

93.     The identity of all members of the Class cannot be determined at this time, but will be so determined at a later time upon obtaining discovery from Defendant and others.

94.     The prosecution of separate actions by each member of the Class would create a substantial risk of inconsistent or varying adjudications with regard to individual members of the Class that would establish incompatible standards of conduct for Defendant.

95.     The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual members of the Class which, as a practical matter, would be dispositive of the interest of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect their interests.  Further, the maintenance of this suit as a Class action is the superior means of disposing of the common questions which predominate herein.

96.     Defendant has acted on grounds generally applicable to the Class, therefore making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

## FIRST CAUSE OF ACTION
### 47 U.S.C. Section 227 et seq.
### Telephone Consumer Protection Act

97.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

98.     The TCPA expressly prohibits the use of an automatic telephone dialing system ("ATDS") and/or an artificial or prerecorded message to call any telephone number assigned to a cellular telephone service, absent an emergency purpose (inapplicable here) or absent Defendant obtaining the prior express consent of the called party.

99.     Defendant utilized and utilizes an ATDS system to send artificial or prerecorded text messages to Plaintiff's and Class members' cell phone numbers.

100.    Under the TCPA, Facebook has the burden to demonstrate that Plaintiff and each member of the Class gave prior express *written* consent to receive autodialed telemarketing texts to their cellular phones.[1]

101.    Plaintiff never activated his text message notifications and, therefore, never authorized Defendant to send him text messages of any kind.

102.    Plaintiff's Notification Settings indicate his express lack of consent to receive text messages of any kind from Facebook, regardless of whether the text messages are telemarketing or not.

103.    Plaintiff and Class members received autodialed, non-emergency Birthday Announcement Texts despite the fact that they did not provide Facebook with consent—written or otherwise—to send Birthday Announcement Texts to their phones.

104.    As detailed above, Defendant has violated 47 U.S.C. Section 227(b)(1)(A)(iii) and as a direct and proximate result, Plaintiff and the putative Class members are entitled, under section 227(b)(3)(B), to, *inter alia*, a minimum of $500 for each violation.

105.    The TCPA further provides for trebling the amount in cases where the violation was committed with actual or constructive knowledge. Here, Defendant knew or should have known that Plaintiff and Class members did not consent to the receipt of unsolicited Birthday Announcement Texts. Indeed, Defendant's own records (*i.e.* each user's Facebook page and notification/mobile settings) show that Plaintiff and Class members did not consent to receive Birthday Announcement Texts from Facebook.

106.    Facebook has a record of each user's notification settings, which will make clear whether each user has consented to receive the Birthday Announcement Texts at issue in this case.

107.    To the extent Defendant knew or should have known that Plaintiff and the Class members did not provide prior express consent to receive Birthday Announcement Texts, the

---

[1] *See 2008 ACA Declaratory Ruling*, 23 FCC Rcd at 565, ¶ 10 (concluding that "[s]hould a question arise as to whether express consent was provided, the burden will be on [the caller] to show it obtained the necessary prior express consent").

court should, pursuant to 47 U.S.C. Section 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and the putative Class members.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff demands judgment as follows:

1.    For an Order determining at the earliest possible time that this matter may proceed as a Class action under Rule 23 and certifying this case as such;

2.    For himself and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA, as a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1);

3.    For himself and each Class member $500.00 in statutory damages for each and every call that violated the TCPA, as a result of Defendant's violations of 47 U.S.C. § 227(b)(1);

4.    For injunctive relief;

5.    For reasonable attorneys' fees and costs of suit;

6.    For pre-judgment interest; and

7.    Such further and other relief the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

*/s/Patrick J. Perotti*

Patrick J. Perotti, Esq. (Ohio Bar #0005481)
Frank A. Bartela, Esq. (Ohio Bar #0088128)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
Tel : (440) 352-3391
Fax : (440) 352-3469
*pperotti@dworkenlaw.com*
*fbartela@dworkenlaw.com*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/Kristen L. Sagafi*

Kristen L. Sagafi, Esq. (SBN 222249)
Martin D. Quiñones (SBN 293318)
**TYCKO & ZAVAREEI LLP**
483 Ninth Street, Suite 200
Oakland, CA 94607
Tel: (510) 254-6808
Fax: (202) 973-0950
*ksagafi@tzlegal.com*
*mquinones@tzlegal.com*

Hassan A. Zavareei (SBN 181547)
**TYCKO & ZAVAREEI LLP**
2000 L Street, N.W., Suite 808
Washington, DC 20036
Tel: (202) 973-0900
Fax: (202) 973-0950
*hzavareei@tzlegal.com*