Andrew B. Clubok (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
Tel:  (212) 446-4800
Fax:  (212) 446-6460
Email:  andrew.clubok@kirkland.com

Susan E. Engel (*pro hac vice*)
Devin S. Anderson (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC  20005
Tel:  (202) 879-5000
Fax:  (202) 879-5200
Email:  susan.engel@kirkland.com
          devin.anderson@kirkland.com

Elizabeth L. Deeley (SBN 230798)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
Tel:  (415) 439-1400
Fax:  (415) 439-1500
Email:  elizabeth.deeley@kirkland.com

Attorneys for Defendant
Facebook, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| COLIN R. BRICKMAN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>FACEBOOK, INC.,<br><br>Defendant. | CASE NO.: 3:16-cv-00751-TEH<br><br>**FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND MEMORANDUM IN SUPPORT**<br><br>Amended Complaint Filed: July 7, 2016<br><br>Judge:            Thelton E. Henderson<br>Hearing Date:  November 7, 2016<br>Time:            10:00 AM<br>Courtroom:    Courtroom 12, 19th Floor |

1

## NOTICE OF MOTION AND MOTION

2      To the Clerk of the Northern District of California and all parties and their attorneys of

3 record:

4      Please take notice that on November 7, 2016, at 10:00 AM, or as soon thereafter as this

5 matter may be heard, before the Honorable Thelton E. Henderson, U.S. District Court Judge, U.S.

6 District Court for the Northern District of California, Courtroom No. 12, 19th Floor, 450 Golden

7 Gate Avenue, San Francisco, California, 94102, defendant Facebook, Inc. will and hereby does

8 move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing the

9 claims of plaintiff Colin Brickman with prejudice, for failure to state a claim upon which relief may

10 be granted.

11      The motion is based on this Notice of Motion and Motion, the accompanying Memorandum

12 of Points and Authorities in support thereof, the pleadings on file with the Court, and such arguments

13 and authorities as may be presented at or before the hearing.

14

## STATEMENT OF THE ISSUES

15      Pursuant to Fed. R. Civ. P. 12(b)(6), Facebook moves to dismiss plaintiff's claims brought

16 under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, on the following

17 grounds:

18
19
    1.    Plaintiff fails to plausibly allege that Facebook sent the alleged birthday text message with an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

20
21
    2.    Plaintiff provided express consent to receive calls from Facebook.

22
    3.    The TCPA violates the First Amendment on its face and as applied to the birthday text message at issue.

23

24

25

26

27

28

FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

CASE NO. 3:16-CV-00751-TEH

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 3

STANDARD OF REVIEW ................................................................................................. 4

STATUTORY BACKGROUND .......................................................................................... 5

ARGUMENT ...................................................................................................................... 7

I.      Plaintiff's Amended Complaint Fails to State a Claim Because It Does Not Allege
        Any Plausible Set of Facts That Would Show the Birthday Message Was Sent Using
        an ATDS. ................................................................................................................. 8

        A.      The Content of the Birthday Message, the Context in Which It Was Received,
                and the Absence of Other Messages to Plaintiff Are Fatal to Plaintiff's
                Allegations of an ATDS. ............................................................................... 8

        B.      Plaintiff's Allegations Show That the Birthday Message Was Not Sent En
                Masse and Involved Human Intervention. .................................................. 12

II.     Plaintiff Provided Prior Express Consent to Receive Text Messages from Facebook. ......... 14

III.    The TCPA Violates the First Amendment on Its Face and as Applied. ............................. 17

CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Am. Civil Liberties Union,*
    542 U.S. 656 (2004)..................................................................................................20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................4, 5

*Baird v. Sabre, Inc.,*
    636 F. App'x 715 (9th Cir. 2016) ...................................................................2, 15, 16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................5, 8

*Café Erotica of Fla., Inc. v. St. Johns Cty.,*
    360 F.3d 1274 (11th Cir. 2004) .................................................................................18

*Cahaly v. Larosa,*
    796 F.3d 399 (4th Cir. 2015) ...............................................................................3, 22

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
    447 U.S. 557 (1980).................................................................................................17

*Cent. Radio Co. v. City of Norfolk,*
    811 F.3d 625 (4th Cir. 2016) .....................................................................................3

*Cincinnati v. Discovery Network, Inc.,*
    507 U.S. 410 (1993).................................................................................................18

*City of Ladue v. Gilleo,*
    512 U.S. 43 (1994)...................................................................................................23

*Cour v. Life360, Inc.,*
    No. 16-CV-00805-TEH, 2016 WL 4039279 (N.D. Cal. July 28, 2016) ...................13

*Dana's R.R. Supply v. Attorney General,*
    807 F.3d 1235 (11th Cir. 2015) ...............................................................................17

*Daniels v. ComUnity Lending, Inc.,*
    No. 13CV488-WQH-JMA, 2014 WL 51275 (S.D. Cal. Jan. 6, 2014) .......................10

*Derby v. AOL, Inc.,*
    No. 15-CV-00452-RMW, 2015 WL 3477658 (N.D. Cal. June 1, 2015)....................13

**TABLE OF AUTHORITIES (CONT'D)**

Page(s)

*Destination Ventures, Ltd. v. FCC*,
46 F.3d 54 (9th Cir. 1995) ........................................................................ 20

*Duguid v. Facebook, Inc.*,
No. 15-CV-00985-JST, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016) ............................... *passim*

*Emanuel v. Los Angeles Lakers, Inc.*,
No. CV 12-9936-GW, 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013) .................................. 8, 16

*FCC v. League of Women Voters of Cal.*,
468 U.S. 364 (1984) ...................................................................... 19, 20

*Fields v. Mobile Messengers Am., Inc.*,
No. C 12-05160 WHA, 2013 WL 6073426 (N.D. Cal. Nov. 18, 2013) .................................. 15

*Flores v. Adir Int'l, LLC*,
No. CV 15-00076-AB, 2015 WL 4340020 (C.D. Cal. July 15, 2015) ............................... *passim*

*Freidman v. Massage Envy Franchising, LCC*,
No. 3:12-CV-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. June 13, 2013) ............................ 10

*Glauser v. GroupMe, Inc.*,
No. C 11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015) .................................... 13

*Gomez v. Campbell-Ewald Co.*,
768 F.3d 871 (9th Cir. 2014) ........................................................................ 20

*Gragg v. Orange Cab Co, Inc.*,
No. C12-0576RSL, 2013 WL 195466 (W.D. Wash. Jan. 17, 2013) ................................... 9

*Gragg v. Orange Cab Co., Inc.*,
995 F. Supp. 2d 1189 (W.D. Wash. 2014) ............................................................ 13

*Grant v. Capital Mgmt. Servs., LP*,
449 Fed. App'x 598 (9th Cir. 2011) ................................................................. 15

*Gresham v. Rutledge*,
No. 4:16CV00241 JLH, 2016 WL 4027901 (E.D. Ark. July 27, 2016) ......................... 3, 21, 22

*Hagans v. Lavine*,
415 U.S. 528 (1974) .................................................................................. 17

*Heinrichs v. Wells Fargo Bank, N.A.*,
No. C 13-05434 WHA, 2014 WL 985558 (N.D. Cal. Mar. 7, 2014) .................................... 15

*Huricks v. Shopkick, Inc.*,
No. C-14-2464 MMC, 2014 WL 3725344 (N.D. Cal. July 24, 2014) ................................. 11

**TABLE OF AUTHORITIES (CONT'D)**

Page(s)

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) .............................................................................. 4

*Jones v. Bock*,
   549 U.S. 199 (2007) ............................................................................................ 15

*Kazemi v. Payless Shoesource Inc.*,
   No. C 09-5142 MHP, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010) ................. 12

*Knutson v. Reply!, Inc.*,
   No. 10-CV-1267 BEN, 2011 WL 291076 (S.D. Cal. Jan. 27, 2011) ............. 10, 11

*Kramer v. Autobytel, Inc.*,
   759 F. Supp. 2d 1165 (N.D. Cal. 2010) ............................................................ 12

*Kruskall v. Sallie Mae Serv., Inc.*,
   No. 15-CV-11780, 2016 WL 1056973 (D. Mass. Mar. 14, 2016) ................... 2, 11

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ............................................................................... 4

*Lardner v. Diversified Consultants Inc.*,
   17 F. Supp. 3d 1215 (S.D. Fla. 2014) ................................................................. 6

*Marks v. Crunch San Diego, LLC*,
   55 F. Supp. 3d 1288 (S.D. Cal. 2014) ..................................................... 8, 13, 14

*McCullen v. Coakley*,
   134 S. Ct. 2518 (2014) ....................................................................................... 19

*McKenna v. WhisperText*,
   No. 5:14-CV-00424-PSG, 2015 WL 428728 (N.D. Cal. Jan. 30, 2015) .... 5, 13, 14

*Metromedia, Inc. v. City of San Diego*,
   453 U.S. 490 (1981) ........................................................................................... 18

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) ................................................................. 1, 14, 15

*Mims v. Arrow Fin. Servs., LLC*,
   132 S. Ct. 740 (2012) ..................................................................................... 5, 23

*Moore v. Dish Network LLC*,
   57 F. Supp. 3d 639 (N.D. W. Va. 2014) .............................................................. 6

*Moser v. FCC*,
   46 F.3d 970 (9th Cir. 1995) .......................................................................... 18, 20

**TABLE OF AUTHORITIES (CONT'D)**

Page(s)

*Norton v. City of Springfield*,
 806 F.3d 411 (7th Cir. 2015) ................................................................. 3, 20

*Pac. Bell v. Pac-West Telecomm, Inc.*,
 325 F.3d 1114 (9th Cir. 2003) ...................................................................... 16

*Pimental v. Google, Inc.*,
 No. C-11-02585-YGR, 2012 WL 691784 (N.D. Cal. Mar. 2, 2012).......................... 10

*Pinkard v. Wal–Mart Stores, Inc.*,
 No. CV 12–0292–CLS, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) ...................... 16

*Pittsburgh Press Co. v. Human Relations Comm'n*,
 413 U.S. 376 (1973)..................................................................................... 17, 18

*Reardon v. Uber Techs., Inc.*,
 115 F. Supp. 3d 1090 (N.D. Cal. 2015) ....................................................... 15, 16, 17

*Reed v. Town of Gilbert*,
 135 S. Ct. 2218 (2015).................................................................. 3, 18, 19, 20, 21

*Republican Party of Minn. v. White*,
 416 F.3d 738 (8th Cir. 2005) .......................................................................... 21

*Republican Party of Minn. v. White*,
 536 U.S. 765 (2002)........................................................................................ 21

*Roberts v. Paypal, Inc.*,
 621 F. App'x 478 (9th Cir. 2015) ............................................................... 2, 15, 16

*Sams v. Yahoo! Inc.*,
 713 F.3d 1175 (9th Cir. 2013) ......................................................................... 15

*Satterfield v. Simon & Schuster, Inc.*,
 569 F.3d 946 (9th Cir. 2009) ....................................................................... 6, 13

*Sepehry-Fard v. Dep't Stores Nat'l Bank*,
 No. 13-CV-03131-WHO, 2013 WL 6574774 (N.D. Cal. Dec. 13, 2013)................. 15

*Smith v. Microsoft Corp.*,
 297 F.R.D. 464 (S.D. Cal. 2014) ................................................................... 14, 15

*Thompson v. Permanente Med. Grp.*,
 No. 12-CV-01301-JST, 2013 WL 1808897 (N.D. Cal. Apr. 29, 2013) ...................... 5

*United Bhd. of Carpenters & Joiners of Am. Local 586 v. NLRB*,
 540 F.3d 957 (9th Cir. 2008) .......................................................................... 19

**TABLE OF AUTHORITIES (CONT'D)**

Page(s)

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976)...................................................................................... 17

*Weisberg v. Stripe, Inc.*,
No. 16-CV-00584-JST, 2016 WL 3971296 (N.D. Cal. July 25, 2016) .............................. 2, 9, 13

*Williams v. T-Mobile USA, Inc.*,
No. 15-CV-03384-JSW, 2015 WL 5962270 (N.D. Cal. Oct. 14, 2015)....................................... 10

*Zilveti v. Glob. Mktg. Research Servs., Inc.*,
No. C-15-2494 MMC, 2016 WL 613010 (N.D. Cal. Feb. 16, 2016) ........................................ 20

**Constitutional Provisions**

U.S. Const. Amend. I. .......................................................................................... 17

**Statutes and Regulations**

28 U.S.C. § 2342 ................................................................................................. 16

47 U.S.C. § 227 ............................................................................................*passim*

47 C.F.R. § 64.1200 .......................................................................2, 7, 11, 16, 17

Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584 .................................. 19

**Rules**

Fed. R. Civ. P. 8 ................................................................................................. 8

Fed. R. Civ. P. 12 ............................................................................................4, 23

**Administrative Decisions**

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
7 FCC Rcd. 8752 (1992)................................................................................ 6, 15

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
18 FCC Rcd. 14014 (2003).......................................................................... 6, 12, 14

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
27 FCC Rcd. 1830 (2012)............................................................................ 6, 7, 16

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
30 FCC Rcd. 7961 (2015).................................................................................*passim*

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    CG02-278, 2016 WL 4158735 (Aug. 4, 2016)............................................................................ 19

**Other Authorities**

H.R. Rep. No. 102-317 (1991)............................................................................ 5, 22

S. Rep. No. 102-178 (1991)............................................................................ 22

Respondents' Br., *ACA Int'l v. FCC*,
    No. 15-1211, 2016 WL 194146 (D.C. Cir. Jan. 15, 2016) ............................................................................ 6

## INTRODUCTION

This case arises under a statute that targets mass telemarketing and spam.  But plaintiff Colin Brickman doesn't allege that Facebook engaged in mass telemarketing or spam.  Rather, plaintiff gave Facebook his cell phone number and is now suing about one message sent to that number—a single, personalized message inviting him to wish a happy birthday to one of his Facebook friends: "Today is Jim Stewart's birthday.  Reply to post a wish on his Timeline or reply with 1 to post 'Happy Birthday!'"  Am. Compl. ¶ 84 (Dkt. No. 43).  This sort of message—which identifies a specific individual with a specific connection to plaintiff and relates to a specific event on a specific date—is a far cry from the type of impersonal, en masse communications that the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits, and does not support a claim for three independent reasons.

*First*, plaintiff's allegations do not support an inference that Facebook sent the birthday message using equipment that has the capacity to "random[ly] or sequential[ly] . . . generat[e]" phone numbers, as required to satisfy the TCPA's definition of an "automatic telephone dialing system," *id.* § 227(a)(1), or "ATDS," a required element of his claim, *see Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (required element includes that the defendant "called a cellular telephone number . . . using an automatic telephone dialing system").  Plaintiff alleges that he uses Facebook, that he input his cell phone number into his Facebook profile, and that he received one text message to that phone number reminding him that it was his Facebook friend's birthday.  *See* Am. Compl. ¶¶ 1, 78, 84 (Dkt. No. 43).  He then alleges that *other* people who use Facebook received other messages reminding them about *different* people who use Facebook on *their* birthdays.  *See id.* ¶¶ 1, 59.  These allegations do not describe an impersonal message sent en masse, but a targeted message that was sent only after two people took several affirmative steps and that was sent to a person with whom Facebook had an existing relationship.  The TCPA just does not reach this kind of claim, as Judge Tigar recently held in dismissing an action arising from Facebook notifications.  *See Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016) (holding that plaintiff's "own allegations suggest direct targeting that is inconsistent with the sort of random or sequential number generation

1  required for an ATDS"); *see also Weisberg v. Stripe, Inc.*, No. 16-CV-00584-JST, 2016 WL

2  3971296, at *4 (N.D. Cal. July 25, 2016) (dismissing TCPA claim where "allegations suggest[ed]

3  that [defendant]'s text messages are targeted to specific phone numbers in response to the voluntary

4  release of a user's phone number"); *Flores v. Adir Int'l, LLC*, No. CV 15-00076-AB (PLAx), 2015

5  WL 4340020, at *1 (C.D. Cal. July 15, 2015) (similar); *Kruskall v. Sallie Mae Serv., Inc.*, No. 15-

6  CV-11780, 2016 WL 1056973, at *3 (D. Mass. Mar. 14, 2016) (recognizing that a business

7  relationship between a plaintiff and a defendant "'raise[s] an inference of personal, rather than

8  automated, interactions'").

9       *Second*, plaintiff's own allegations show that Facebook had his prior express consent to make

10  calls to his cell phone number, and the birthday message is therefore exempt from liability.  47

11  U.S.C. § 227(b)(1)(a) (exempting messages sent with "prior express consent of the called party").

12  The FCC has ruled unequivocally that for "non-telemarketing and non-advertising calls, express

13  consent can be demonstrated by the called party giving prior express oral or written consent or, in

14  the absence of instructions to the contrary, *by giving his or her wireless number to the person*

15  *initiating the autodialed or prerecorded call.*"  *In the Matter of Rules & Regulations Implementing*

16  *the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991–92 (2015) ("2015 Order")[1] (emphasis

17  added).  Plaintiff alleges that he gave Facebook his cell phone number, *see* Am. Compl. ¶¶ 74–75,

18  and the birthday message does not fall within the FCC's limited definition of a "telemarketing"

19  message for which express written consent to receive autodialed calls is required.  *See* 47 C.F.R.

20  § 64.1200(f)(12).   Unlike cases involving phone numbers that were reassigned or disputes over

21  whether a plaintiff provided his phone number, plaintiff's admission makes this a textbook case of

22  prior express consent.  *See, e.g.*, *Baird v. Sabre, Inc.*, 636 F. App'x 715, 716 (9th Cir. 2016) (holding

23  that the plaintiff had "expressly consented to the text message in question when she provided

24  Hawaiian Airlines with her cellphone number"); *Roberts v. Paypal, Inc.*, 621 F. App'x 478, 479 (9th

25  Cir. 2015) (similar).

26

27  _____

[1]       The FCC's 2015 Order is currently subject to a challenge that is pending in the D.C. Circuit.  *See ACC Int'l v. FCC*, No. 15-1211 (D.C. Cir.).   Briefing is complete, and oral argument is

28  scheduled for October 19, 2016.

*Third*, this Court should not construe the TCPA as reaching a personalized, targeted birthday message for which plaintiff provided his phone number and which arose from a relationship plaintiff has with the sender, because the TCPA suffers from serious constitutional defects.  But if this Court does extend the statute to cover the messages at issue here, then it must strike down the TCPA as an unconstitutional restriction of speech both on its face and as-applied.  The TCPA's ban on speech is riddled with exceptions that favor particular subject matter and that give the government broad discretion to pick and choose favored speech.  For example, the TCPA allows calls about government debt but bans calls about private debt.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  And pursuant to its statutory authority to "exempt  . . . calls . . . as necessary in the interest of . . . privacy rights," *id.* § 227(b)(2)(C), the FCC has exempted texts about such mundane matters as medical prescriptions and banking notifications based on their content, *see* 2015 Order, 30 FCC Rcd. at 8023–31.  As the Supreme Court recently made clear in *Reed v. Town of Gilbert*, a statute that draws such content-based distinctions is subject to strict scrutiny and presumptively unconstitutional.  *See* 135 S. Ct. 2218, 2227 (2015) (striking down a sign ordinance that on its face imposed different restrictions depending on what message the sign carried).  Following *Reed*, courts have struck down statutes like the TCPA that impose liability based on the communicative content of a message.  *See Cent. Radio Co. v. City of Norfolk*, 811 F.3d 625, 634 (4th Cir. 2016) (striking down sign ordinance under *Reed*); *Norton v. City of Springfield*, 806 F.3d 411, 412 (7th Cir. 2015) (striking down panhandling ordinance under *Reed*); *Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) (striking down state robocall statute under *Reed*); *Gresham v. Rutledge*, No. 4:16CV00241 JLH, 2016 WL 4027901, at *5 (E.D. Ark. July 27, 2016) (same).  The TCPA cannot overcome the presumption of unconstitutionality because it is both under- and over-inclusive, and it is by no means the least restrictive means of advancing the government's purported privacy interest.  Plaintiff already amended his complaint once, and the amended complaint should now be dismissed with prejudice for failure to state a claim under the TCPA.

## FACTUAL BACKGROUND

Facebook provides a mobile app and website that enable people to create personalized profiles where they can connect and share with other people who use Facebook.  *See* Am. Compl.

¶ 5.  Making a Facebook "friend" involves establishing a two-way, voluntary connection that both people agree to be a part of.  Facebook allows people who use its service to share "news headlines, photographs, videos, personal stories, and activity updates." *Lane v. Facebook, Inc.*, 696 F.3d 811, 816 (9th Cir. 2012).   "Members generally publish information they want to share to their personal profile, and the information is thereby broadcasted to the members' online 'friends' (i.e., other members in their online network)." *Id.*  "Anyone may register to use Facebook's social networking site, but registrants must provide their real names, email addresses" or mobile telephone numbers, "gender, and birth dates." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1100 (9th Cir. 2014); *see also* Am. Compl. ¶¶ 1, 75, 81.

Plaintiff uses Facebook, and he provided his cell phone number to Facebook.  Am. Compl. ¶ 78.  To facilitate the social experience, Facebook offers people who use its service the option to receive text message notifications relating to their account.  *See id.* ¶¶ 37, 41–42, 54.   One type of notification is a birthday message.  This notification lets the person know that a particular "Facebook friend" is having a birthday on that particular date.  *Id.* ¶¶ 1, 58–59.

Plaintiff alleges that he never modified or activated text message notifications for his mobile phone.  *See id.* ¶¶ 42, 44–45, 79.  He nevertheless claims he received a single text message from Facebook on December 15, 2015, that said:  "Today is Jim Stewart's birthday.  Reply to post a wish on his Timeline or reply with 1 to post 'Happy Birthday!'"  *Id.* ¶ 84.  As alleged, Jim Stewart is one of plaintiff's Facebook friends, which means that plaintiff requested or accepted a friend connection with Mr. Stewart, and that Mr. Stewart is another person who uses Facebook, who entered his birthdate into Facebook's system, and who elected to share it with his friends.  *See id.* ¶¶ 1, 58, 67–69.

Plaintiff filed this putative class action alleging that Facebook sent him the birthday message, and that Facebook sends other birthday messages to other people who use Facebook using specialized telemarketing equipment and without obtaining their consent in violation of the TCPA.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 428728, at *2 (N.D. Cal. Jan. 30, 2015) (quoting *Iqbal*, 556 U.S. at 663).  A complaint that provides no more than a "formulaic recitation of the elements of a cause of action" will not suffice on a motion to dismiss.  *Twombly*, 550 U.S. at 555.  Instead, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level," *id.* at 545, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678.  Dismissal is appropriate "where the complaint lacks . . . sufficient facts to support a cognizable legal theory."  *Thompson v. Permanente Med. Grp.*, No. 12-CV-01301-JST, 2013 WL 1808897, at *2 (N.D. Cal. Apr. 29, 2013).

## STATUTORY BACKGROUND

The TCPA makes it "unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any ***automatic telephone dialing system*** . . . to any telephone number assigned to a . . . cellular telephone service . . . for which the called party is charged for the call."  47 U.S.C. § 227(b)(1)(A) (emphasis added).  The Act was Congress's response to an outpouring of concern in the late 1980s and early 1990s over abusive practices by telemarketers, who used certain computerized equipment that would generate numbers to be called at random or in a particular sequence.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) (noting that Congress passed the TCPA in response to "[v]oluminous consumer complaints about abuses of telephone technology").  In light of its concern over telemarketers' use of random and sequential number generators, Congress sought to restrict the use of particular "telecommunications equipment."  H.R. Rep. No. 102-317, at 5 (1991).  The Act accomplished this by sharply curbing the use of what it called an "automated telephone dialing system" or "ATDS," for short.

An ATDS is not just any computerized telephone; instead, the TCPA defines an ATDS as equipment that can "store or produce telephone numbers to be called, using a random or sequential number generator . . . and . . . dial such numbers."  47 U.S.C. § 227(a)(1).  Pursuant to its authority

to "prescribe regulations to implement the requirements" of the Act's prohibitions, *id.* § 227(b)(2), the FCC has issued a number of declaratory rulings on whether particular equipment qualifies as an ATDS. *See, e.g.*, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14092–93 (2003) ("2003 Order"). One such ruling concerns a predictive dialer, which "is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." *Id.* at 14091. Although a predictive dialer may be using a "fixed set of numbers" at a given moment, the FCC has determined that it qualifies as an ATDS because predictive dialers have the capacity to "store or produce telephone numbers to be called, using a random or sequential number generator," even if they do not use that capacity at a given time, 2015 Order, 30 FCC Rcd. at 7972–73 (quoting 47 U.S.C. § 227(a)(1)(A)), and also because a predictive dialer "proceed[s] through [a list of numbers] either randomly or in some sequence," Respondent Br., *ACA Int'l v. FCC*, No. 15-1211, 2016 WL 194146, at *41 (D.C. Cir. Jan. 15, 2016) (citing *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1220–23 (S.D. Fla. 2014), and *Moore v. Dish Network LLC*, 57 F. Supp. 3d 639, 653–55 (N.D. W. Va. 2014)). Relatedly, the FCC has ruled that the term "call" in the TCPA includes text messages. 2003 Order, 18 FCC Rcd. at 14115; *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (affording *Chevron* deference to the FCC's interpretation of "call" as including text messages).

The TCPA contains a number of exclusions. ATDS and artificial or prerecorded voice calls can be made with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). The FCC has never "require[d] any specific method by which a caller must obtain such prior express consent." 2015 Order, 30 FCC Rcd. at 7990. "For non-telemarketing and non-advertising calls, express consent can be demonstrated by the called party giving prior express oral or written consent or, in the absence of instructions to the contrary, by giving his or her wireless number to the person initiating the autodialed or prerecorded call." *Id.* at 7991–92; *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 (1992) ("1992 Order") (establishing rule that provision of a phone number is consent). For telemarketing calls, the consent must be written. *See In the Matter of Rules & Regulations Implementing the Tel.*

*Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1839 (2012) ("2012 Order"); 47 C.F.R. § 64.1200(a)(2).

The TCPA also excludes messages based on their subject matter or content.  For example, a call containing urgent information is permitted without consent, *see* 47 U.S.C. § 227(b)(1)(A), as are calls about "a debt owed to or guaranteed by the United States," *id.* § 227(b)(1)(A)(iii).  The TCPA also endows the FCC with authority to exempt certain calls that "will not adversely affect the privacy rights that this section is intended to protect."  *Id.* § 227(b)(2)(B)(ii)(I) (for artificial or prerecorded voice calls); *see also id.* § 227(b)(2)(C) (for ATDS calls "to a cellular telephone service that are not charged to the called party").  Pursuant to this authority, the FCC recently exempted a large number of calls that convey financial or healthcare-related information.  *See* 2015 Order, 30 FCC Rcd. at 8023–31.

## ARGUMENT

The amended complaint should be dismissed for three independent reasons.  First, plaintiff alleges no plausible set of facts showing that the birthday message was sent using an ATDS.  As Judge Tigar recently recognized in dismissing another TCPA complaint against Facebook, a plaintiff's allegations that Facebook sent him a targeted, personal message about use of his Facebook account render implausible allegations that Facebook used equipment that "has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator," 47 U.S.C. § 227(a)(1)(A).  *See Duguid*, 2016 WL 1169365, at *4.  Second, plaintiff gave Facebook "prior express consent" to call him, and the birthday message is thus exempt from liability.  Third, the TCPA is a content-based restriction of speech that cannot survive strict scrutiny, both on its face and as-applied to the specific birthday message at issue.

Plaintiff has already had one chance to amend, and he cannot cure these defects simply by repleading—since he cannot change the fundamentally individual nature of the alleged birthday message, the fact that he gave Facebook his phone number prior to receiving the text, or the plainly content-based nature of the TCPA.  This Court should therefore dismiss the Amended Complaint with prejudice.  *See, e.g.*, *Flores*, 2015 WL 4340020, at *1 (dismissing with prejudice because "Plaintiff does not allege any facts that would lead to the reasonable inference that Defendant

1   utilized an 'automatic telephone dialing system' . . . under the TCPA"); *Emanuel v. Los Angeles*

2   *Lakers, Inc.*, No. CV 12-9936-GW (SHx), 2013 WL 1719035, at *4 (C.D. Cal. Apr. 18, 2013)

3   (dismissing TCPA action where the communication alleged "is simply not actionable under the

4   TCPA").

5   **I.      Plaintiff's Amended Complaint Fails to State a Claim Because It Does Not Allege Any**

6   **Plausible Set of Facts That Would Show the Birthday Message Was Sent Using an ATDS.**

7          Plaintiff's allegations do not support an inference that the birthday message he received was

8   sent using an ATDS, because the content and context of the alleged birthday message, as well as the

9   absence of other messages sent to him, support only one plausible inference:   direct targeting

10  following human intervention.   These allegations are wholly inconsistent with the statutory

11  requirement for equipment to be an ATDS, namely the "capacity to store or produce telephone

12  numbers to be called, using a random or sequential number generator."   47 U.S.C. § 227(a)(1)(A).

13  Accordingly, the "TCPA does not apply."   *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288,

14  1291 (S.D. Cal. 2014).

15  **A.      The Content of the Birthday Message, the Context in Which It Was Received,**

16  **and the Absence of Other Messages to Plaintiff Are Fatal to Plaintiff's Allegations of an ATDS.**

17         Judge Tigar recently dismissed a similar suit proceeding on a similar conclusory allegation

18  that Facebook is using an ATDS to send generic, impersonal texts in violation of the TCPA.   *Duguid*

19  *v. Facebook* involved allegations concerning Facebook's "login notifications," which alert a person

20  "via text message when her account is accessed from a new device."   2016 WL 1169365, at *1.   The

21  plaintiff alleged that although he "never provided his cellphone number to Facebook or authorized

22  Facebook to send him text messages, he received repeated login notification messages."   *Id.*   He

23  claimed that these texts were "sent to Plaintiff's cellular phone . . . with an ATDS as defined by 47

24  U.S.C. § 227(a)(1)" because the "ATDS has the capacity to store or produce telephone numbers to

25  be called, using a random or sequential number generator."   *Id.* at *4 (quoting the complaint).

26         Judge Tigar granted Facebook's motion to dismiss.   Following the Supreme Court's direction

27  in *Twombly* that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

28  requires more than labels and conclusions," 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2)), Judge

1   Tigar recognized that the "conclusory allegation that Facebook used an ATDS is not, without more,

2   sufficient to support a claim for relief under the TCPA." *Duguid*, 2016 WL 1169365, at *4; *see also,*

3   *e.g.*, *Flores*, 2015 WL 4340020, at *3 ("Without more, Plaintiff's conclusory allegation that

4   Defendant used an ATDS is little more than speculation, and cannot support a claim for relief under

5   the TCPA.").   Like other cases addressing whether a plaintiff had plausibly alleged the use of an

6   ATDS, Judge Tigar then examined "the *content* of the message, the *context* in which it was received,

7   and the *existence of similar messages*" to see whether the plaintiff plausibly alleged that an ATDS

8   had been used. *Duguid*, 2016 WL 1169365, at *5 (quoting *Flores*, 2015 WL 4340020, at *4, and

9   emphasis added).   But the *Duguid* plaintiff's "allegations suggest[ed] that Facebook's login

10  notification text messages are *targeted* to *specific* phone numbers and are triggered by attempts to

11  log in to Facebook accounts *associated* with those phone numbers." *Id.* (emphasis added).   Because

12  the messages bore key hallmarks of individual targeting, it was not plausible to claim "that Facebook

13  sends text messages en masse to randomly or sequentially generated numbers" as required by the

14  statute.  *Id.*; *see also Weisberg*, 2016 WL 3971296, at *4 (applying *Duguid* and holding no ATDS

15  was alleged based on allegations that "suggest that [defendant]'s text messages are targeted to

16  specific phone numbers in response to the voluntary release of a user's phone number").

17        What was true in *Duguid* is true here.   Plaintiff's conclusory allegation that "the Facebook

18  system . . . had the capacity to store or produce telephone numbers using a random or sequential

19  number generator," Am. Compl. ¶ 75, is belied by the "content" of the birthday text at issue, "the

20  context in which it was received," and "the existence of similar messages," 2016 WL 1169365, at *5

21  (quoting *Flores*, 2015 WL 4340020, at *4); *see also Gragg v. Orange Cab Co, Inc.*, No. C12-

22  0576RSL, 2013 WL 195466, at *3 n.3 (W.D. Wash. Jan. 17, 2013) (similar).

23        ***Content of the message***:   The allegedly infringing text message identifies a specific

24  individual (Jim Stewart) with a specific connection to plaintiff (his Facebook friend) relating to a

25  specific event (Mr. Stewart's birthday) on a specific date (December 15, 2015).   *See* Am. Compl.

26  ¶ 84.   In other words, this is a "text message[] targeted to [a] specific phone number[]" that was

27  "triggered" by a particular event.  *Duguid*, 2016 WL 1169365, at *5.  Plaintiff emphasizes the use of

28  a template, *see* Am. Compl. ¶¶ 1, 58, but that does not suggest the use of an ATDS.  If anything, a

customizable, fill-in-the-blank template is strong evidence of the sort of specific targeting inconsistent with an ATDS. *Duguid* involved a template, and that template was evidence that the texts were personal and circumstance-specific as opposed to random or sequential. 2016 WL 1169396, at *1 ("The notifications state: 'Your Facebook account was accessed from [internet browser] at [time]. Log in for more info.'"). And the same was true in a number of cases that held that the use of an ATDS was not plausible in the face of allegations suggesting customized messages. *See, e.g.*, *Flores*, 2015 WL 4340020, at *5 (dismissing claim where texts involved a template with a customer-specific reference number); *Daniels v. ComUnity Lending, Inc.*, No. 13CV488-WQH-JMA, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014) (dismissing claim where messages were somewhat generic but also were "directed specifically toward Plaintiffs"); *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) (dismissing claim where messages were "similar in content, but differ enough to make it appear as if an ATDS was not utilized"); *cf. Pimental v. Google, Inc.*, No. C-11-02585-YGR, 2012 WL 691784, at *2 (N.D. Cal. Mar. 2, 2012) (allegations "plausibly suggested the use of an ATDS" where defendants "harvested phone numbers" and sent impersonal, advertisement texts "en masse").

**Context in which it was received**:  Similarly, the context of the birthday message does not suggest a generic marketing message that was sent en masse with an ATDS. The message reflects the very core of what Facebook is about—it facilitates interaction and sharing of information among Facebook "friends" by notifying a particular person (plaintiff) who gave Facebook his phone number about a particular event (his Facebook friend Mr. Stewart's birthday). The alert is a product of the connection that plaintiff made with Mr. Stewart as part of the Facebook experience in which each chose to participate. *See* Am. Compl. ¶¶ 1, 84. Messages that share these indicia of targeting can't plausibly suggest use of an ATDS. *See Flores*, 2015 WL 4340020, at *5 ("The context of the messages was Defendant's desire to collect on a specific debt, not mass marketing."); *see also, e.g.*, *Williams v. T-Mobile USA, Inc.*, No. 15-CV-03384-JSW, 2015 WL 5962270, at *3 (N.D. Cal. Oct. 14, 2015) (dismissing TCPA claim where plaintiff's allegation suggested defendant intended to call plaintiff about a debt owed); *Knutson v. Reply!, Inc.*, No. 10-CV-1267 BEN (WMc), 2011 WL

291076, at \*2 (S.D. Cal. Jan. 27, 2011) ("There is nothing in the complaint that allows the court to infer the calls were randomly generated or impersonal."); *Kruskall*, 2016 WL 1056973, at \*3 (dismissing claim where the existence of business relationship between plaintiff and defendant "raise[s] an inference of personal, rather than automated, interactions"). There can be no plausible inference that a message about a specific individual's birthday was sent en masse to a random or sequential set of numbers.

Plaintiff tries to bring this case within the ambit of the TCPA by describing the birthday alerts as telemarketing from which Facebook reaps profit. Am. Compl. ¶¶ 33–35, 94–95. Plaintiff later waffles on this assertion, *see id.* ¶ 112, for good reason. There is simply no basis for labeling a birthday reminder as telemarketing: it alerts a person about the birthday of a Facebook friend who chose to share that date with his or her network of friends. It doesn't "encourag[e] the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12) (defining "telemarketing").[2] *Cf. Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC, 2014 WL 3725344, at \*1 (N.D. Cal. July 24, 2014) (encouraging the download of a shopping application). Plaintiff hypothesizes that the birthday message was telemarketing because it was intended to incentivize him to log onto Facebook, which in turn would have caused him to see advertising, which in turn generates revenue for Facebook. Am. Compl. ¶¶ 19–21, 27–28. This theoretical chain leads to absurd results: any communication by any entity that is designed to improve the experience of the people using its service would be deemed "telemarketing" under plaintiff's theory. For example, a breaking news alert for the San Francisco Chronicle would be telemarketing, because it would "encourag[e] consumers to access" the news service, which in turn potentially "generate[s]" some "revenue." *Id.* at 5, ¶ 22. That simply is not the common understanding of telemarketing, nor is it the definition espoused by the FCC.

***Existence of similar messages***: Here, it makes sense that plaintiff does not allege that he received the birthday message more than once. "That's the funny thing about birthdays. They're

---

[2]    Plaintiff alleges only that the messages were "telemarketing." *See* Am. Compl. ¶¶ 33–35, 94–95. He does not allege that the text messages constitute advertisements as defined by the FCC. Nor could he, for the same reasons discussed above.

kind of an annual thing."  Tangled (Walt Disney Pictures 2010); *see also* Anonymous, The Barbarian Birthday Dirge ("Birthdays come but once a year . . . .").  The existence of a single birthday message—and the fact that *other* people received messages that identified *different* Facebook friends on *their* birthdays, Am. Compl. ¶¶ 1, 58—is fully consistent with the other indicia of direct targeting and cuts against plaintiff's claim that Facebook used an ATDS.[3]

**B.      Plaintiff's Allegations Show That the Birthday Message Was Not Sent En Masse and Involved Human Intervention.**

Nor can plaintiff salvage his case by alleging that "the Facebook system had the capacity to store and dial telephone numbers without human intervention."  *Id.* ¶ 74.  The FCC has described "the basic functions of an autodialer" as "'dial[ing] numbers without human intervention' and . . . 'dial[ing] thousands of numbers in a short period of time.'"  2015 Order, 30 FCC Rcd. at 7975 (quoting 2003 Order, 18 FCC Rcd. at 14092).  Plaintiff attempts to harness the FCC's use of the phrase "without human intervention" by alleging that Facebook creates the birthday messages with "computer software" instead of "having employees type out individual text messages to [a] user's Facebook friends," and that computer software then "store[s]" and "sends" the birthday messages. Am. Compl. ¶¶ 67, 69–71.  But in describing an ATDS as equipment that operates "without human intervention," the FCC did not and could not jettison the essential statutory requirement of a "random or sequential number generator."  47 U.S.C. § 227(a)(1)(A).  To the contrary, equipment that uses a "random or sequential number generator" *is* sending messages "without human intervention," because the messages are sent randomly or sequentially without a person involved.

The key consideration is the absence of human intervention in the selection of the numbers to be dialed, because human involvement in that process necessarily means that the numbers are not

---

[3]      Courts have found allegations sufficient only where the plaintiff has alleged text messages that were generic and impersonal advertisements, where the plaintiff had no relationship with the defendant and no reason to be in contact, and where the messages appeared to have been sent en masse.  *See, e.g.*, *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (text messages "written in an impersonal manner" advertising "A CASH ADVANCE" and "DEAL ALERT" and where the plaintiff "had no other reason to be in contact with Defendants"); *Kazemi v. Payless Shoesource Inc.*, No. C 09-5142 MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010) (text messages "formatted in SMS short code licensed to defendants, scripted in an impersonal manner and sent en masse supports a reasonable inference that the text messages were sent using an ATDS"); *see generally Duguid*, 2016 WL 1169365, at *4 (listing characteristics of ATDS messages).

1    being generated or dialed at random or in some kind of sequence.  Courts have thus held that simply

2    storing telephone numbers and dialing those telephone numbers with a computer is not sufficient

3    when there is human involvement in determining which numbers are going to be called.  *See*

4    *Weisberg*, 2016 WL 3971296, at *4 (allegation that equipment dialed numbers from a list without

5    human intervention was insufficient where plaintiff's allegations showed defendant sent messages

6    targeted to a specific phone number that plaintiff had voluntarily released and messages where thus

7    not "sent randomly to him by an ATDS"); *see also Derby v. AOL, Inc.*, No. 15-CV-00452-RMW,

8    2015 WL 3477658, at *4 (N.D. Cal. June 1, 2015) (ATDS inadequately alleged where text

9    "recipient's number [did] not come from a list, but rather [was] provided by the [] user who

10   direct[ed] AOL to send the text in the first place"); *Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH,

11   2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015) (no ATDS shown where defendant's equipment

12   obtained phone numbers "through the actions of the group's creator"); *Marks*, 55 F. Supp. 3d at

13   1289, 1292 (similar); *Gragg v. Orange Cab Co., Inc.*, 995 F. Supp. 2d 1189, 1193 (W.D. Wash.

14   2014) (similar); *McKenna*, 2015 WL 428728, at *4 (similar).  Concluding otherwise would require

15   ignoring the "clear and unambiguous" statutory direction, *Satterfield*, 569 F.3d at 951, to evaluate

16   whether the numbers are being "store[d] or produce[d] . . . using a random or sequential number

17   generator," 47 U.S.C. § 227(a)(1)(A), something the FCC has never claimed to do.

18        Here, plaintiff's allegations show a specific, targeted message that was sent on a single

19   occasion only after two people using Facebook took a series of steps:  plaintiff signed up for

20   Facebook, entered his phone number, and made a friend connection with Mr. Stewart, who himself

21   entered his birth date, and then elected to share that date with his network of friends.  The choices by

22   plaintiff and Mr. Stewart to take these steps, coupled with the arrival of December 15, caused the

23   message to be sent.  Each of these steps, or choices, to send a single message involves the type of

24   human intervention that shows Facebook did not send a message using an ATDS under any

25   interpretation of the term.  *See Cour v. Life360, Inc.*, No. 16-CV-00805-TEH, 2016 WL 4039279, at

26   *1, *4 (N.D. Cal. July 28, 2016) (holding that app user is not the "maker" of a call using an ATDS

27   where app user makes "affirmative choices" to allow app to send invitational messages to contacts

28

1   even though user has no control over content of message and does not know when or how the

2   messages will be sent).

3         As a result, plaintiff's allegations that Facebook used equipment with the capacity to store

4   and produce numbers using a random or sequential number generator are implausible and his claim

5   should be dismissed.  *See Flores*, 2015 WL 4340020, at \*4 (allegation of "direct targeting [] is

6   inconsistent with the sort of random or sequential number generation required for an ATDS");

7   *McKenna*, 2015 WL 428728, at \*4 (dismissing TCPA claim where "affirmative allegations" refuted

8   the use of an ATDS); *see also Marks*, 55 F. Supp. 3d at 1292 (defendant's system lacked the

9   "capacity to store or produce numbers to be called, using a random or sequential number generator,"

10  because the phone numbers "only enter[ed] the system through one of the three methods," "[n]one

11  [of which] could reasonably be termed a 'random or sequential number generator'").[4]

12  **II.   Plaintiff Provided Prior Express Consent to Receive Text Messages from Facebook.**

13        Plaintiff's TCPA claim fails for the independent reason that his own allegations preclude a

14  finding that Facebook sent him text messages "without [his] prior express consent," which the Ninth

15  Circuit has held is an element of a TCPA claim.  *See Meyer*, 707 F.3d at 1043; *see also Smith v.*

16  *Microsoft Corp.*, 297 F.R.D. 464, 471 n.2 (S.D. Cal. 2014) (holding that *Meyer* overruled prior

17

18

19

20

21

---

22        [4]   Plaintiff does not allege that Facebook actually used a "predictive dialer," *i.e.*, "equipment

23  that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls," which the FCC has found can be an

24  ATDS.  2003 Order, 18 FCC Rcd. at 14091; *see also Duguid*, 2016 WL 1169365, at \*6 ("Duguid has not alleged that Facebook uses a predictive dialer, or equipment that functions like a predictive

25  dialer.").  Nor could he—predictive dialers are specialized *tele*marketing equipment involving live phone calls, not text messages.  In any event, even if plaintiff had alleged use of a predictive dialer,

26  as discussed, he still would have to allege the equipment has the capacity to store or produce numbers, using a random or sequential number generator, which the FCC has interpreted to include

27  dialing thousands of numbers in a short period of time without human intervention.  But plaintiff's allegations show that human intervention was involved throughout the chain of events that caused

28  the birthday text, and that there was nothing random or sequential about the text sent to plaintiff.

1   district court decisions that found prior express consent was an affirmative defense).[5]  The TCPA

2   excludes calls made using an ATDS when the caller obtained "the prior express consent of the called

3   party."  47 U.S.C. § 227(b)(1)(A).  The FCC has long held that for "non-telemarketing and non-

4   advertising calls, express consent can be demonstrated by the called party . . . , in the absence of

5   instructions to the contrary, . . . giving his or her wireless number to the person initiating the

6   autodialed or prerecorded call."  2015 Order, 30 FCC Rcd. at 7991–92.  That is because "persons

7   who knowingly release their phone numbers have in effect given their invitation or permission to be

8   called at the number which they have given, absent instructions to the contrary."  1992 Order, 7 FCC

9   Rcd. at 8769.  "In accordance with the 1992 FCC Order, the vast majority of cases to address the

10  issue have held that a telephone customer who provides her number to another party consents to

11  receive calls or texts from that party."  *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1097

12  (N.D. Cal. 2015) (citing cases); *see also, e.g.*, *Baird*, 636 F. App'x at 716 ("Baird expressly

13  consented to the text message in question when she provided Hawaiian Airlines with her cellphone

14  number.  Baird knowingly released her phone number to Hawaiian Airlines while making a flight

15  reservation.  She did not provide any 'instructions to the contrary' indicating that she did not 'wish

16  [ ] to be reached' at that number.") (quoting 1992 Order, 7 FCC Rcd. at 8769); *Roberts*, 621 F.

17

18  [5]   Many decisions in this Court appear to hold, despite *Meyer* and in reliance on a footnote
    from an earlier unpublished Ninth Circuit decision, that prior express consent is an affirmative
19  defense.  *See, e.g.*, *Heinrichs v. Wells Fargo Bank, N.A.*, No. C 13-05434 WHA, 2014 WL 985558,
    at *3 (N.D. Cal. Mar. 7, 2014) (affirmative defense) (citing *Grant v. Capital Mgmt. Servs., LP*, 449
20  Fed. App'x 598, 600 n.1 (9th Cir. 2011)); *Sepehry-Fard v. Dep't Stores Nat'l Bank*, No. 13-CV-
    03131-WHO, 2013 WL 6574774, at *3 (N.D. Cal. Dec. 13, 2013) (same).  Because *Grant* is an
21  unpublished decision, there should be no real dispute that the clear articulation in *Meyer* of consent
    as an element of a TCPA claim is binding precedent.  *See Fields v. Mobile Messengers Am., Inc.*,
22  No. C 12-05160 WHA, 2013 WL 6073426, at *3 (N.D. Cal. Nov. 18, 2013) ("Because our court of
    appeals has stated that consent is an element of a prima facie TCPA claim, this order is duty-bound
23  to place the burden on plaintiffs to prove a lack of prior express consent."); *Smith*, 297 F.R.D. at 472
    ("*Meyer* mandates that it is Plaintiff's burden to show a lack of express prior consent."); *see also* 9th
24  Cir. R. 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent, except when
    relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").

25      In any event, because a defendant has the right to attack defects apparent on the face of a
26  complaint through a motion to dismiss, *see Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013)
    ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where
27  the 'allegations in the complaint suffice to establish' the defense.") (quoting *Jones v. Bock*, 549 U.S.
    199, 215 (2007), and because plaintiff admits that he gave Facebook his phone number, it makes no
28  difference in this case.

App'x at 479 ("Under the FCC's interpretation, Roberts expressly consented to text messages from PayPal when he provided PayPal his cell phone number.").

Under a straightforward application of the statute, the FCC's rule, and the litany of cases rejecting TCPA claims when the plaintiff provided her number to the caller, plaintiff's claim here cannot proceed. Plaintiff admits that he provided his telephone number to Facebook when he signed up. Am. Compl. ¶¶ 77–78. And he never alleges that he sent a STOP message or otherwise attempted to revoke his consent prior to receiving the text. That is sufficient to give Facebook authorization to contact him. *See* 2015 Order, 30 FCC Rcd. at 7991–92; *Baird*, 636 F. App'x at 716; *Roberts*, 621 F. App'x at 479; *Reardon*, 115 F. Supp. 3d at 1097. It is no response for purposes of the TCPA that Facebook has provided a process whereby people can customize the kinds of text message notifications they desire to receive. *See* Am. Compl. ¶¶ 2, 37, 39–54. The FCC has fixed the meaning of "express consent" under the TCPA, and the FCC's interpretation is binding on this Court pursuant to the Hobbs Act. *See* 28 U.S.C. § 2342; *Pac. Bell v. Pac-West Telecomm, Inc.*, 325 F.3d 1114, 1125 (9th Cir. 2003). That Facebook provides people the ability to customize the texts they receive—including opting out of receiving text messages altogether—does not eliminate consent for purposes of the TCPA, which is present when the phone number is given until that person sends instructions to the contrary. Here, plaintiff alleges that he never fiddled with the notification settings on his account, and he does not allege that he even viewed the text notification setting screens or otherwise conveyed his wish not to receive text messages to Facebook. Affirmative "instructions to the contrary"—what a called party must do after giving out a telephone number—can hardly be gleaned from plaintiff's silence, even though Facebook's default settings are allegedly set to off. "To hold otherwise would contradict the overwhelming weight of social practice: that is, distributing one's telephone number is an invitation to be called." *Emanuel*, 2013 WL 1719035, at *2–3 (quoting *Pinkard v. Wal–Mart Stores, Inc.*, No. CV 12–0292–CLS, 2012 WL 5511039, at *5 (N.D. Ala. Nov. 9, 2012)).

In order to get around his prior express consent, plaintiff looks to the FCC's rules requiring *written* consent to be contacted for *telemarketing* calls, *see* 2012 Order, 27 FCC Rcd. at 1839 (2012); 47 CFR § 64.1200(a)(2). Am. Compl. ¶¶ 33, 99, 110. Again, this argument proves far too much.

The FCC has expressly defined what constitutes telemarketing—calls or messages sent "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."  47 C.F.R. § 64.1200(f)(12).  A birthday text comes nowhere close to meeting that definition.  Facebook is not asking plaintiff to spend any money on anything with this text—it is simply a reminder about his friend's birthday.  *See, e.g.*, *Reardon*, 115 F. Supp. 3d at 1093–96 (messages recruiting drivers for Uber's services do not constitute telemarketing messages).  As discussed *supra*, plaintiff's theory of telemarketing would render any communication by any business regarding any service "telemarketing," in direct contravention of the FCC's specific definition and common sense.

Because plaintiff provided express consent to receive text messages when he signed up for Facebook and did not provide any instructions to the contrary prior to receiving the birthday text, he fails to state a claim under the TCPA.

**III.    The TCPA Violates the First Amendment on Its Face and as Applied.**

Messages about a person's birthday undoubtedly constitute speech entitled to First Amendment protection.  The First Amendment prevents Congress from passing laws "abridging the freedom of speech."  U.S. Const. Amend. I.  On its face and as applied here, the TCPA violates the First Amendment.  Given these grave constitutional concerns, this Court can and should construe the statute not to apply here and thus resolve this case on the "available" and "dispositive" "nonconstitutional ground[s]."  *Hagans v. Lavine*, 415 U.S. 528, 547 (1974).  But if the Court construes plaintiff's allegations as sufficient to state a claim under the TCPA, then the Court should strike down the statute as a content-based restriction of speech that does not survive strict scrutiny.

As a threshold matter, the birthday messages at issue here do not fall into the category of commercial speech with its lower level of scrutiny, despite plaintiff's unsupported allegations that the messages were "commercial."  Am. Compl. ¶¶ 26, 58.  Commercial speech is a "narrow category of necessarily expressive communication," *Dana's R.R. Supply v. Attorney General*, 807 F.3d 1235, 1246 (11th Cir. 2015), that is "related solely to the economic interests of the speaker and its audience," *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561 (1980), and "does 'no more than propose a commercial transaction,'" *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (quoting *Pittsburgh Press Co. v. Human*

1    *Relations Comm'n,* 413 U.S. 376, 385 (1973)).   Plaintiff appears to theorize that status update

2    messages are commercial marketing messages because they were intended to incentivize someone to

3    log onto the person's Facebook account, which in turn may cause the person to see and then click on

4    advertising, which in turn generates revenue for Facebook.   *See* Am. Compl. ¶ 21 ("Thus, any

5    invitation to join, post a message to, or interact with Facebook is ultimately meant to promote the

6    service and entice users to take an action that will result in a financial benefit to Facebook.").   Such a

7    conception of the commercial speech doctrine leads to the same absurd results described above with

8    regard to the FCC's definition of "telemarketing," *see supra*, Parts I.A, II, by deeming any

9    communication by any entity that is designed to improve the experience of the people using its

10   service commercial speech.   This sprawling conception of commercial speech has no basis in the

11   law.   Moreover, plaintiff's mischaracterization of the speech at issue has no impact on Facebook's

12   facial challenge to the statute, because the Ninth Circuit has recognized that the TCPA applies to

13   both commercial and noncommercial speech.   *See Moser v. FCC*, 46 F.3d 970, 973 (9th Cir. 1995)

14   ("[N]othing in the statute requires the Commission to distinguish between commercial and

15   noncommercial speech . . . ."); *see also Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 504–05

16   & n.11 (1981) (plurality opinion) (recognizing that a facial challenge to a statute regulating

17   commercial and noncommercial speech can be pressed by a party even if that party engaged only in

18   advertising); *Café Erotica of Fla., Inc. v. St. Johns Cty.*, 360 F.3d 1274, 1281 (11th Cir. 2004)

19   (recognizing that defendants "engag[ing] in commercial advertising does not prevent us from

20   considering their facial challenges" to the statute as content-based restriction of both commercial and

21   noncommercial speech).

22            As the Supreme Court recently reiterated, content-based restrictions of speech are

23   "presumptively unconstitutional," *Reed*, 135 S. Ct. at 2226, and subject to "the most exacting

24   standard of review," *id.* at 2237 (Kagan, J., concurring), no matter "the government's benign motive,

25   content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech,"

26   *id.* at 2228 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)).   A restriction

27   of speech is "content-based" on its face when it "draws distinctions based on the message a speaker

28   conveys." *Id.* at 2227.

The TCPA is plainly content-based because it's riddled with exceptions that "draw[] distinctions based on the message a speaker conveys," and that allow the government to pick and choose what speech is desirable and what speech is not—the hallmarks of a content-based restriction of speech. *Reed*, 135 S. Ct. at 2227; *see also McCullen v. Coakley*, 134 S. Ct. 2518, 2531 (2014) (noting that a statute is content-based "if it require[s] 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred" (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984)); *United Bhd. of Carpenters & Joiners of Am. Local 586 v. NLRB*, 540 F.3d 957, 966 (9th Cir. 2008) ("We . . . reiterate that the examination of the content of a speaker's message is the hallmark of a content-based rule."). For example, as recently amended, the TCPA exempts from liability a call "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015 § 301(a), Pub. L. No. 114-74, 129 Stat. 584, codified at 47 U.S.C. § 227(b)(1)(A)(iii). It is difficult to imagine a more blatant example of the government choosing speech that it clearly favors for naked financial reasons (debt collection calls about government-issued or government-backed debt) over speech that it does not (any other debt collection call). The TCPA also broadly exempts any "call made for emergency purposes." 47 U.S.C. § 227(b)(1)(A), (B). In applying this exception, the FCC has closely scrutinized the content of the messages to determine whether they fit the FCC's interpretation of the phrase "emergency purposes." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG02-278, 2016 WL 4158735, at *7–8 (Aug. 4, 2016) (applying emergency exception to various messages from educational institutions, including notifications about unexcused absences). And the statute empowers the FCC to exempt calls made to a wireless number with an ATDS if the calls "are not charged to the called party" and are "in the interest of the privacy rights this section [was] intended to prevent." *Id.* § 227(b)(2)(C); *see also id.* § 227(b)(2)(B)(ii)(I) (similar for artificial or prerecorded voice calls to residential telephone lines). The FCC has applied this malleable "privacy" exception to calls about such mundane matters like medical appointment reminders. *See* 2015 Order, 30 FCC Rcd. at 8030. Each of these exceptions requires a court to "'examine the content of the message that is conveyed to determine whether' a violation has occurred." *McCullen*, 134 S. Ct. at 2531 (quoting *FCC v. League of Women Voters of*

*Cal.*, 468 U.S. 364, 383 (1984)); *see also Reed*, 135 S. Ct. at 2227 (holding that a speech restriction is "content-based" on its face when it "draws distinctions based on the message a speaker conveys"); *Norton*, 806 F.3d at 412 ("*Reed* effectively abolishes any distinction between content regulation and subject-matter regulation.  Any law distinguishing one kind of speech from another by reference to its meaning now requires a compelling justification.").

In *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 874 (9th Cir. 2014), *aff'd on nonrelevant issue*, 136 S. Ct. 663 (2016), the Ninth Circuit assumed that the automated call provision of the TCPA was content-neutral because it does not distinguish between commercial and noncommercial speech—it regulates both.  However, the Ninth Circuit observed that the defendant in that case had "not argue[d]" that *exceptions* to the automated call provision made it a content-based regulation, and the Ninth Circuit noted that like the junk-fax provision of the TCPA, 47 U.S.C. § 227(b)(1)(C), the automated call provision in fact has content-based exceptions.  *See Gomez*, 768 F.3d at 876 n.3 (citing *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 56 (9th Cir. 1995), which held that the junk-fax provision is content-based).  *Gomez* thus previewed the argument that Facebook makes here.  Although some courts have addressed First Amendment challenges to the TCPA, *see, e.g.*, *Zilveti v. Glob. Mktg. Research Servs., Inc.*, No. C-15-2494 MMC, 2016 WL 613010, at *3 (N.D. Cal. Feb. 16, 2016) (rejecting First Amendment argument that the TCPA impermissibly constitutes a blanket ban on political speech), no court has ever addressed whether the TCPA's exceptions render it a content-based restriction of speech that can survive strict scrutiny.[6]

Because it is content-based, the TCPA is subject to strict scrutiny.  The "purpose of the [strict scrutiny] test is not to consider whether the challenged restriction has some effect in achieving Congress' goal. . . .  The purpose of the test is to ensure that speech is restricted no further than necessary to achieve the goal, for it is important to ensure that legitimate speech is not chilled or punished."  *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004).  "A narrowly tailored

---

[6]     The Ninth Circuit had previously rejected the argument that the artificial pre-recorded message provision of the TCPA, 47 U.S.C. § 227 (b)(1)(B), is content-based, but again it did so only on the ground that that provision does not "distinguish between commercial and noncommercial speech."  *Moser*, 46 F.3d at 973.  The parties in that case did not raise, and the Ninth Circuit has never addressed, whether any *exception* renders that provision content-based.

regulation is one that actually advances the state's interest (is necessary), does not sweep too broadly (is not overinclusive), does not leave significant influences bearing on the interest unregulated (is not underinclusive), and could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least-restrictive alternative)." *Republican Party of Minn. v. White*, 416 F.3d 738, 751 (8th Cir. 2005). Even if the government's interest in promoting residential privacy is a compelling one, the TCPA, with its amorphous exceptions, still flunks the strict scrutiny test for three independent reasons.

***First***, the TCPA's expansive exceptions render it "hopelessly underinclusive." While plaintiff complains about a supposedly unwanted notification from Facebook, the speech that the TCPA exempts is no different. Texts about emergencies are no greater an intrusion of privacy than texts about account information. Texts about medical appointments, prescriptions, or school closures may be at least as intrusive as texts about a Facebook friend's birthday. And finally—and most obviously—texts about government debt are no less invasive than texts about private debt. The (increasing) patchwork of exceptions that pocks the TCPA causes it to fail the tailoring prong of strict scrutiny. As was the case in *Reed*, the government "cannot claim that placing strict limits on [some calls] is necessary to [promote privacy] while at the same time allowing unlimited numbers of other types of [calls] that create the same problem." 135 S. Ct. at 2231; *see also Gresham*, 2016 WL 4027901, at *4 (holding that state robocall statute was underinclusive where the government "fail[ed] to explain or show why other speech compromising the interests of residential privacy and public safety is left unrestricted"). A "law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction upon truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002).

***Second***, the application of the statute here is also overinclusive because it sweeps far beyond the concerns that motivated its passage. The TCPA was Congress's response to telemarketing abuse involving certain computerized equipment that would generate numbers to be called at random or in a particular sequence. *See* 47 U.S.C. § 227 note (expressing deep concern over the "proliferation of unwanted, nuisance calls to [customers'] homes . . . due to the increased use of cost-effective

1    telemarketing techniques"); *Mims*, 132 S. Ct. at 744 (noting that Congress passed the TCPA in

2    response to "[v]oluminous consumer complaints about abuses of telephone technology").   The

3    TCPA sought to "protect the privacy interests of residential telephone subscribers by placing

4    restrictions on unsolicited, automated telephone calls to the home," S. Rep. No. 102-178, at 1 (1991),

5    *as reprinted in* 1991 U.S.C.C.A.N. 1968, using particular "telecommunications equipment," H.R.

6    Rep. No. 102-317, at 5 (1991).

7            But plaintiff seeks to apply the TCPA not to a telemarketing call made to a randomly or

8    sequentially generated number, but to a targeted message about a Facebook friend's birthday that

9    was sent to a phone number that plaintiff admits he input into his own Facebook account.   In striking

10   down a South Carolina robocall statute, the Fourth Circuit in *Cahaly v. Larosa* recognized that a

11   mismatch between the concerns that animated the passage of a statute and its proposed application

12   means that statute cannot survive strict scrutiny.   In that case the mismatch was between the

13   concerns about commercial calls that led to the statute's creation (similar to the TCPA) and the

14   application of the statute to noncommercial calls.  *See Cahaly*, 796 F.3d at 406.  In fact, *Cahaly*

15   cited the House Report on the TCPA as support for the holding that the South Carolina statute was

16   overinclusive.   Application of the TCPA here similarly targets messages well outside the scope of

17   Congress's concern, such as notifications that people who signed up for those accounts actually want

18   to receive.

19           ***Third**,* as the Fourth Circuit recognized in *Cahaly*, there are numerous less restrictive

20   alternatives for "protect[ing] residential privacy and tranquility from unwanted and intrusive

21   robocalls," *Id.* at 405, which are the governmental interests at stake with the TCPA.  These "less

22   restrictive alternatives include time-of-day limitations, mandatory disclosure of the caller's identity,

23   or do-not-call lists." *Id.*; *see also Gresham*, 2016 WL 4027901, at \*4 & nn.17–19 (listing "statutes,

24   codes, and regulations that other states and the District of Columbia have implemented to regulate

25   robocalls," including "time-of-day restrictions, disconnection requirements, and prohibitions on calls

26   to emergency lines").   Each of these would advance Congress's interest in promoting privacy

27   without requiring the government to sift through speech to determine its worth and value.

28           Banning some calls and exempting others "may seem like a perfectly rational way to regulate

1  [calls], but a clear and firm rule governing content neutrality is an essential means of protecting the

2  freedom of speech, even if laws that might seem 'entirely reasonable' will sometimes be 'struck

3  down because of their content-based nature.'"  *Reed*, 135 S. Ct. at 2231 (quoting *City of Ladue v.*

4  *Gilleo*, 512 U.S. 43, 60 (1994) (O'Connor, J., concurring)).  This case involves allegations that

5  Facebook used text notifications to convey information *that people can and do consent to receive*.

6  Am. Compl. ¶¶ 42, 44, 48.  Plaintiff may quibble with whether the consent rises to the level required

7  under the TCPA, but he admits he signed up for Facebook, that the birthday message involved one

8  of his Facebook friends, and that he provided his cell phone number.  As evidenced by the

9  notification service at issue in this case, the people who use Facebook desire a flow of information

10  that is now possible thanks to the innovations of the recent decade.  Yet potential TCPA liability

11  makes the provision of legitimate, desired communications a risky activity for entities like

12  Facebook.  If construed to reach the text notifications at issue here, the TCPA would reach so

13  broadly that it is unconstitutional both on its face and as applied.

14                                          **CONCLUSION**

15         For all the foregoing reasons, the Court should grant Facebook's motion to dismiss under

16  Rule 12(b)(6) with prejudice.

17  ///

18  ///

19  ///

20

21

22

23

24

25

26

27

28

1    DATED:  August 9, 2016

2                                              /s/ Andrew B. Clubok

3                                              Andrew B. Clubok (*pro hac vice*)
                                               KIRKLAND & ELLIS LLP
4                                              601 Lexington Avenue
                                               New York, NY  10022
5                                              Tel:  (212) 446-4800
                                               Fax:  (212) 446-6460
6                                              Email:  andrew.clubok@kirkland.com

7
                                               Susan E. Engel (*pro hac vice*)
8                                              Devin S. Anderson (*pro hac vice*)
                                               KIRKLAND & ELLIS LLP
9                                              655 Fifteenth Street, NW
                                               Washington, DC  20005
10                                             Tel:  (202) 879-5000
                                               Fax:  (202) 879-5200
11                                             Email:  susan.engel@kirkland.com
12                                                      devin.anderson@kirkland.com

13                                             Elizabeth L. Deeley (SBN 230798)
                                               KIRKLAND & ELLIS LLP
14                                             555 California Street
                                               San Francisco, CA  94104
15                                             Tel:  (415) 439-1400
                                               Fax:  (415) 439-1500
16                                             Email:  elizabeth.deeley@kirkland.com

17

18                                             *Attorneys for Defendant*
                                               *Facebook, Inc.*
19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

On August 9, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Andrew B. Clubok*
Andrew B. Clubok