UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| COLIN R. BRICKMAN, | Case No. 16-cv-00751-TEH |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING FACEBOOK'S MOTION TO CERTIFY COURT'S ORDER DENYING FACEBOOK'S MOTION TO DISMISS FOR INTERLOCUTORY APPEAL AND STAYING CASE** |
| FACEBOOK, INC., | |
| Defendant. | |

On January 27, 2017, the Court denied Facebook's Motion to Dismiss because the Court concluded Brickman had sufficiently alleged a violation of the Telephone Consumer Protection Act ("TCPA") and that the TCPA, as a content-based regulation of speech, survived strict scrutiny. ECF No. 78 ("Order"). Defendant Facebook, Inc. ("Facebook") subsequently filed this motion to certify the Court's Order for interlocutory appeal and stay the case. ECF No. 84 ("Mot."). In the alternative, Facebook asks the Court to stay the case pending the outcome of *ACA International v. FCC,* No. 15-1211, (D.C. Cir. filed Nov. 25, 2015). Brickman and the United States timely opposed Facebook's motion for interlocutory appeal, ECF Nos. 89 ("Pla.'s Opp'n"), 90 ("Gov't Opp'n"); and Facebook timely replied, ECF No. 95 ("Reply"). The Court heard oral arguments on Facebook's motion on April 24, 2017. ECF No. 98. After carefully considering the parties' written and oral arguments, the Court now GRANTS Facebook's motion, CERTIFIES its Order for interlocutory appeal, and STAYS all further proceedings pending the Ninth Circuit's decision whether to hear the appeal. If the Ninth Circuit does not hear the interlocutory appeal, then proceedings are stayed pending the District of Columbia Circuit's resolution of the appeal in *ACA International.*

## I. BACKGROUND

Facebook owns and operates the online social networking service, www.facebook.com. Compl. ¶ 13. On or about December 15, 2015, Facebook, through

its short code SMS number 32665033, texted Brickman's cell phone number an unsolicited Birthday Announcement Text stating "Today is Jim Stewart's birthday. Reply to post a wish on his Timeline or reply with 1 to post 'Happy Birthday!'". *Id.* ¶ 84. Although Brickman supplied Facebook his cell phone number, which is now associated to his Facebook page, Brickman indicated in the Notification Settings of his Facebook account that he did not want to receive any text messages from Facebook, and also did not activate text messaging for his cell phone. *Id.* ¶¶ 2, 36, 79–82, 85. Brickman alleged Facebook employed computer software to send "Birthday Announcement Texts" without human intervention to users. *Id.* ¶ 66. He alleged Facebook's computer system reviews user data on a daily basis to identify users who have birthdays on a particular day; identifies the user's Facebook friends who will receive the Birthday Text Announcement Texts for a particular user's birthday; identifies the phone numbers of the Facebook friends that will receive the message; automatically inserts the name of the user celebrating a birthday into a form text in the appropriate language for each of the user's Facebook friends, creates the Birthday Announcement Texts; compiles a list of cell phone numbers to which it will send Birthday Announcement Texts, stores those cell phone numbers in a queue, and then sends the text messages from that queue, without any human intervention. *Id.* ¶¶ 66–73.

Defendants moved to dismiss the suit arguing that Plaintiffs had not sufficiently alleged a violation of the TCPA because the Birthday Announcement Text suggests "direct targeting following human intervention," and because Brickman provided express consent to receive the text messages from Facebook. ECF No. 50 at 8–17. Defendant also argued that even if the Court were to find Brickman sufficiently alleged a violation of the TCPA, the TCPA was unconstitutional under the First Amendment. *Id.* at 17–23. The Court denied Facebook's motion on January 27, 2017. ECF No. 78. In doing so, the Court found Brickman sufficiently alleged that Facebook used an automated telephone dialing system ("ATDS") to send him a message, Order at 5:4–8:22. The Court also found the TCPA and its exceptions to constitute a content-based regulation under *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), Order at 11:9–12:24; however, the Court also determined

2

the TCPA survived strict scrutiny because the TCPA serves a compelling interest and is narrowly tailored to achieve that interest, *id.* at 12:26–18:13.

## II. LEGAL STANDARD

Title 28 U.S.C. § 1292(b) "provides for interlocutory appeals from otherwise not immediately appealable orders, if conditions specified in the section are met, the district court so certifies, and the court of appeals exercises its discretion to take up the request for review." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (citation omitted). Section 1292(b) states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. . . . [A]pplication for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Thus, before the Court can certify a case for interlocutory appeal under § 1292(b), the Court must determine if the order being appealed meets the following three requirements: (1) there is a controlling question of law; (2) there are substantial grounds for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). The party seeking review bears the burden of showing that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, (1978).

Even if the Order meets the criteria for certification under § 1292(b), the Court has discretion to grant or deny certification, and its decision is unreviewable. *Exec. Software North Am., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 24 F.3d 1545, 1550 (9th Cir. 2008) *overruled on other grounds by Cal. Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008). Once the district court issues a certification order, the Court of

3

1 Appeals has discretion to grant or deny permission to appeal. *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348–49 (9th Cir. 1988).

**III. DISCUSSION**

**a. There are Two Controlling Questions of Law at Issue in the Court's Order**

A question of law is controlling if its resolution on appeal "could materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. A question may be controlling even though its resolution does not determine who will prevail on the merits. *See Kuehner v. Dickinson & Co.*, 84 F.3d 316, 318–19 (9th Cir. 1996). However, a question is not controlling simply because its immediate resolution may promote judicial economy. *See In re Cement*, 673 F.2d at 1027.

Facebook suggests the Court's Order presents two controlling questions of law: (1) the definition of an ATDS under the TCPA, and (2) whether the TCPA, as a government content-based regulation of speech, survives strict scrutiny. Mot. at 5–7. The Court agrees. Here, there is no doubt that were the Ninth Circuit to apply a different standard[1] and reverse the Court's determination on the ATDS finding, the litigation could completely end or take a decidedly different path. *See Asis Internet Servs. v. Active Response Grp.*, No. C07 6211 TEH, 2008 WL 4279695, at *3 (N.D. Cal. Sept. 16, 2008) (finding a controlling question of law existed where reversal on the issue would end the litigation). As to the second question, neither party disputes that if the Ninth Circuit were to find the TCPA to be unconstitutional, the litigation would end. *Id.* Moreover, the Government concedes a controlling question exists, Gov't Opp'n at 6:5 ("It is the broader question – whether the statute is constitutional – that is controlling . . . ."), and Brickman

---

[1] District courts in this Circuit have differed in determining which standard to apply when determining if a defendant plausibly used an ATDS. *Compare, e.g., Weisberg v. Stripe, Inc.*, No. 16-cv-00584-JST, 2016 WL 3971296, at *3–4 (N.D. Cal. July 25, 2016) (focusing on the statutory text), *and Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1291 (S.D. Cal. 2014) (rejecting FCC interpretations as binding on the court), *with Luna v. Shac, LLC*, 122 F. Supp. 3d 936, 938–39 (N.D. Cal. 2015) (focusing on FCC interpretations), *and Sherman v. Yahoo! Inc.*, 150 F. Supp. 3d 1213, 1216 (S.D. Cal. 2015) (finding FCC interpretations are binding on the court).

4

1 did not oppose this element in his opposition or during oral arguments. Accordingly, the
2 first § 1292(b) factor is satisfied.

### b. Substantial Grounds for Difference of Opinion Exist Here

In determining whether a "substantial ground for difference of opinion exists" under § 1292(b), the Court must examine to what extent the controlling law is unclear. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on this point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (citation omitted). At the same time, "just because a court is the first to rule on a particular question . . . does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.* (citation omitted). Lastly, "the level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case." 16 CHARLES ALAN WRIGHT & ARTHUR P. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3930 (3d ed.).

Facebook argues both controlling questions discussed above meet this element. The Court also agrees. "One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed." *Heaton v. Social Finance, Inc.*, No. 14-cv-05191-TEH, 2016 WL 232433, at *4 (N.D. Cal. Jan. 20, 2016) (citations omitted). In regard to the question addressing the definition of an ATDS, it is clear that courts in this Circuit have reached conflicting interpretations when evaluating whether a plaintiff's allegations of an ATDS are sufficient. *See supra* note 1; *see also Wright v. Lyft, Inc.*, No. C14-421 MJP, 2015 WL 12977403, at *3 (W.D. Wash. Jan. 6, 2016) ("[C]ourts have taken varied approaches to interpreting 'ATDS' creating a conflicting body of law."). Also, while several courts in this Circuit have dismissed TCPA claims on the basis that a plaintiff's claims suggest "direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS," *see, e.g.,*

5

*Flores v. Adir Int'l, LLC*, No. CV 15-00076-AB (PLAx), 2015 WL 4340020, at *4 (C.D. Cal. July 15, 2015); *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016), the Ninth Circuit implicitly rejected this reasoning in the recent decision of *Flores v. Adir Int'l LLC,* No. 15-56260, 2017 WL 1101103, at *1 (9th Cir. Mar. 24, 2017) (finding the use of an ATDS to be plausible even where district court found plaintiff's allegations suggested direct targeting). Indeed, the Ninth Circuit itself is currently seeking to clarify the definition of an ATDS in a pending case. *See Marks v. Crunch of San Diego*, No. 14-56834 (9th Cir. filed Nov. 21, 2014) (reviewing a district court decision which held the FCC did not have the authority to change the TCPA's definition of an ATDS). Considering the previous cases within this Circuit to have applied differing interpretations of an ATDS, and considering the Court's own acknowledgement that the question was "a close one," *see* Order at 6:25, the Court finds that there are substantial grounds for disagreement on this first question.

In regard to the question addressing the constitutionality of the TCPA, the Court acknowledges this was a novel issue of first impression. Prior to the Court's Order, the Court is unaware of any decisions subjecting the TCPA to strict scrutiny. More recently, however, as the government points out, one court in this district, presented with very similar facts, also found the TCPA was a content-based regulation of speech subject to strict scrutiny, and likewise found the TCPA survived strict scrutiny. *See Holt v. Facebook, Inc.*, No. 16-cv-02266-JST, 2017 WL 1100564 (N.D. Cal. Mar. 9, 2017). Thus, it appears the only two decisions to apply strict scrutiny to the TCPA both found the statute to be constitutional. But simply because there are no conflicting opinions does not make the Court's decision unreviewable. *Reese*, 643 F.3d at 688 ("[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent."). While the Court found the TCPA survived strict scrutiny, it is plausible that other courts could have endorsed the opposite result. This is especially true in light of case law explaining the high bar that strict scrutiny presents. *See, e.g.,*

*Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656 (2015) ("'it is the rare case' in which a State demonstrates that a speech restriction is narrowly tailored to serve a compelling interest."); *United States v. Playboy Entertainment Grp., Inc.*, 529 U.S. 803 (2000) ("Content-based regulations are presumptively invalid"); *DISH Network Corp.*, v. F.C.C., 653 F.3d 771, 777–78 (9th Cir. 2011) (explaining that content-based regulations "almost always violate the First Amendment."). The second § 1292(b) factor is therefore satisfied.

### c. Immediate Appeal From the Order Will Advance the Ultimate Termination of the Litigation.

This factor is closely related to the question of whether there is a controlling issue of law. *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000) (citations omitted). Courts typically "apply pragmatic considerations to determine whether certifying non-final orders will materially advance the ultimate termination of the litigation." *Beeman v. Anthem Prescription Mgmt., Inc.*, No. EDCV 04-407-VAP(SGLx), 2007 WL 8433884 (C.D. Cal. Aug. 2, 2007).

Here, where there are two "highly debatable question[s] that [are] easily separated from the rest of the case, that offer[] an opportunity to terminate the litigation completely, and that may spare the parties of the burden of a trial that is expensive for them even if not for the judicial system," the Court finds an immediate appeal would advance the ultimate termination of the litigation. 16 CHARLES ALAN WRIGHT & ARTHUR P. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3930 (3d ed.). Thus, the third § 1292(b) factor is satisfied.

Accordingly, the Court GRANTS Facebook's motion to certify the Court's Order for interlocutory appeal.

### d. Assuming the Ninth Circuit Declines to Hear the Interlocutory Appeal, A Stay Pending Appeal in the *ACA International* Case is Appropriate

A District Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997) (citing *Landis v. North Am. Co.*, 299 U.S. 248 (1936)). When considering whether to stay proceedings, courts must consider (1) the possible damage which may result from the

7

granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX, Inc. v. Hall*, 300 F.3d 265 (9th Cir. 1962)). The party seeking a stay bears the burden of establishing its need. *Clinton*, 520 U.S. at 708 (1997) (citing *Landis*, 299 U.S. at 255). But "if there is even a fair possibility that the stay . . . will work damage to some one else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citation and internal quotation marks omitted).

In weighing the competing interests, the Court finds a stay pending the *ACA International* case is appropriate here. First, Brickman has failed to demonstrate how he would be harmed or prejudiced by the granting of a stay. Brickman has not alleged ongoing calls or text messages to himself, a fading memory, or the spoliation of discovery. Also, while Brickman alleged during oral arguments that other members of the putative class may suffer harm from unsolicited Birthday Announcement Texts, the Court is unpersuaded that this creates a likelihood of substantial harm. This is especially true in light of the fact that the *ACA International* case has been fully briefed and was argued in October 2016; in other words, a stay would likely be short-lived and not result in prejudice to Brickman or the putative class. *See Errington v. Time Warner Cable Inc.*, No. 2:15-cv-02196 RSWL (DTB), 2016 WL 2930696, at \*4 (C.D. Cal. May 18, 2016) (finding that because the *ACA International* case had been fully briefed, the appeal was not likely to be long and the possible prejudice to the plaintiff was minimal). Second, if the Court were to deny the stay, both parties would run the risk of incurring unnecessary litigation fees and expenses. *See Clayton v. Synchrony Bank*, No. 1:16-cv-01242-JLT, 2016 WL 7106018, at \*4 (E.D. Cal. Nov. 7, 2016) (finding that "because the ruling in *ACA International* may completely dispose of [the Plaintiff's TCPA claim] . . . . the parties should not have to engage in discovery related to a claim that may not be viable."); *Small v. GE Capital*, No.

8

EDCV 15-2479 JGB (DTBx), 2016 WL 4502460, at *3 (C.D. Cal. June 9, 2016), ("[F]urther litigation absent a ruling may be unnecessary and will require both parties and the court to spend substantial resources."). Lastly, the Court believes the resolution of *ACA International* may streamline the proceedings and promote judicial economy by simplifying the issues in this case. *See Reynolds v. Time Warner Cable, Inc.*, No. 16-cv-6165W, 2017 WL 362025, at *2 (W.D.N.Y. Jan. 25, 2017) ("Surely, the *ACA International* decision, whatever its outcome and scope, will clarify many of the issues raised by this litigation and ensure the determination of those issues under the correct legal standards, thus minimizing the risk of revisiting legal determinations on reconsiderations or on appeal.").

Additionally, the Government agrees that a stay is appropriate because the *ACA International* decision "may create additional non-constitutional grounds for dismissal, thereby obviating the need for further litigation of the TCPA's constitutionality." Gov't Opp'n at 4:7–8. On the other hand, Brickman opposes the granting of a stay because it's "more likely that the D.C. Circuit's decision will not resolve any of the issues in this case, because the *ACA* court will remand without vacatur." Pla.'s Opp'n at 7:1–7 (citing Kristina Daugirdas, *Evaluating Remand Without Vacatur: A New Judicial Remedy for Defective Agency Rulemakings*, 80 N.Y.U. L. REV. 278 (2005). However, Brickman fails to illustrate why this is so, nor has he provided examples of this judicial remedy being used in similar litigations.

For these reasons, the Court joins the several other courts in this Circuit that have decided the balancing of interests weigh in favor of a stay pending the *ACA International* decision. *See, e.g., Clayton*, 2016 WL 7106018; *Errington*, 2016 WL 2930696; *Small*, 2016 WL 4502460; *Fontes v. Time Warner Cable, Inc.*, No. CV14-2060-CAS(CWx), 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015); *Reynolds v. Geico Corporation*, No. 2:16-cv-01940-SU, 2017 WL 815238 (D. Or. Mar. 1, 2017).

///

///

## IV. CONCLUSION

For the foregoing reasons, Facebook's motion to certify the Court's Order for interlocutory appeal is GRANTED. If the Ninth Circuit grants Facebook permission to appeal this Court's Order, proceedings in this Court are STAYED pending decision on that appeal. If the Ninth Circuit does not grant permission for interlocutory appeal, proceedings in this action are STAYED pending the D.C. Circuit's decision in *ACA International v. FCC*, No. 15-1211.

In any event, the parties shall notify the Court of the D.C. Circuit's resolution of *ACA International* no later than seven days after it occurs.

**IT IS SO ORDERED.**

Dated: 04/27/17

THELTON E. HENDERSON
United States District Judge