UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLIN R. BRICKMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>FACEBOOK, INC.,<br><br>    Defendant. | Case No. 16-cv-00751-WHO<br><br>**ORDER DENYING MOTION FOR LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 133, 148 |

This class action case – alleging that Facebook violated the Telephone Consumer Protection Act of 1991 (TCPA) by using an "automatic telephone dialing system" (ATDS) to transmit unauthorized text messages containing birthday announcements to consumers' cell phones – was stayed pending the United States Supreme Court's opinion in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1164 (2021). In *Duguid*, the Court held that "[t]o qualify as an "automatic telephone dialing system," a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id*. at 1167. I now consider whether plaintiff Colin Brickman pleads a plausible claim following *Duguid* in his proposed Second Amended Complaint and conclude that he has not.

The Court in *Duguid* had "granted certiorari to resolve a conflict among the Courts of Appeals regarding whether an autodialer must have the capacity to generate random or sequential phone numbers." *Id*. at 1168. Its holding expressly rejected the Ninth Circuit's definition – that an ATDS need not "be able to use a random or sequential generator to store numbers; it need only have the capacity to 'store numbers to be called' and 'to dial such numbers automatically'" – and instead sided with the courts of appeal that concluded systems that "target phone numbers that were obtained in a non-random way (specifically, from consumers who provided them)" were not

covered ATDS. *See Hufnus v. DoNotPay, Inc.*, 20-CV-08701-VC, 2021 WL 2585488, at *1 (N.D. Cal. June 24, 2021) (discussing *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 460 (7th Cir. 2020) (holding that a system that "exclusively dials numbers stored in a customer database" does not qualify as an autodialer) and *Glasser v. Hilton Grand Vacations Co.*, LLC, 948 F.3d 1301, 1306 (11th Cir. 2020) (adopting a definition of autodialer that excludes equipment that "target[s] a list of debtors" or "target[s] individuals likely to be interested in buying vacation properties")). In rejecting Duguid's argument that "using a random or sequential number generator" modified only "produce" and not also "store" in the TCPA's definition of an ATDS, the Court explained that Congress could have included "both functions in the autodialer definition so as to clarify the domain of prohibited devices" so, for "instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list [and] then "store those numbers to be dialed at a later time" or "even if the storing and producing functions often merge, Congress may have 'employed a belt and suspenders approach' in writing the statute." *Id*. at 1172 n.7.

After *Duguid was* decided, I set a briefing schedule requiring Brickman to file a motion for leave to amend and a proposed Second Amended Complaint demonstrating that he could plead his TCPA claim and plausibly allege that Facebook used an ATDS and allowing Facebook to show why leave should be denied because any proposed amendment would be futile under *Duguid*. Dkt. No. 132. Brickman argues that he has done so by alleging that Facebook first identifies the telephone numbers of a Facebook user's friends (that he concedes were provided by users like himself, although he contends that he and the purported class members did not consent to receiving texts from Facebook on those numbers) and then uses the required "random or sequential number generator" to "store" those numbers in a sequential or random order – thus meeting the *Duguid* definition of an ATDS as explained in footnote 7. *See* Proposed SAC ¶¶ 67-85;[1] Reply at 1. The system later fills in the content of the message and then sends by massive

---

[1] Proposed SAC ¶ 69 ("Facebook programmed its mobile messaging application (i.e. computer software or an algorithm that operates as an autodialer) to first identify a Facebook user's birthday as the trigger to create and send the form Birthday Announcement Texts to that Facebook user's friends"); ¶ 70 ("Facebook mobile messaging application creates the Birthday

"blast" thousands of messages in bulk in the sequential or random order determined by the number generator. Proposed SAC ¶¶ 73, 77.[2]

Brickman's proposed SAC, even considering the supporting Snyder Declaration, is insufficient to plausibly allege use of an ATDS post-*Duguid*. I agree with the numerous district court opinions – including two from this District – that have dismissed cases following *Duguid* for failure to plausibly allege use of an ATDS where the number called by the defendant – here Brickman's cell phone – was not *itself* created by the random or sequential number generator.

In *Hufnus v. DoNotPay, Inc*., 2021 WL 2585488, at *1 (N.D. Cal. June 24, 2021), the plaintiff made similar allegations to the ones in this case, that the calling platform at issue "stores [] numbers in a random and/or sequential way; uses a random and/or sequential generator to pull from the list of numbers to send targeted text messages; and uses a random and/or sequential generator to determine the sequence in which to send messages." The Hon. Vince Chhabria from this District granted a motion to dismiss because the numbers called were provided by a consumer seeking defendant's services, and "not phone numbers identified in a random or sequential fashion. The platform thus does not qualify as an autodialer under the TCPA." *Id*.

---

Announcement Text by using the person's name, date of birth, and a list of the cellular telephone numbers of that person's friends as a set of instructions used to automatically generate the Birthday Announcement Texts"); ¶ 71 ("The Birthday Announcement Texts are identical text messages sent to the cellular telephone numbers of the friends of the birthday celebrant."); ¶ 72 ("This process is known as a text message 'blast,' which is sent to a list of cellular telephone numbers stored by Facebook."); ¶ 73 ("The Birthday Announcement Texts are part of a specialized blast text message campaign that is based on the current date where the telephone numbers of the recipients are collected in a random or sequential order either at the time that the Birthday Announcement Texts are sent or at some prior time"); ¶ 75 ("The list of the cellular telephone numbers that any given Birthday Announcement Text is sent to are collected and then stored by Facebook's mobile messaging application in a random or sequential order."); ¶ 77 ("The Facebook mobile messaging application then automatically sends the Birthday Announcement Text at a prescheduled time on the Facebook user's birthday in a sequential or random order as determined by the number generator (which operates using an algorithm), that Facebook created and used to send these messages.").

[2] Brickman's proposed SAC attaches and relies on the declaration of an expert (Randall A. Snyder, Dkt. No. 133-1) who explains why in his view – and as reiterated in the proposed SAC cited above – Facebook's birthday text message system plausibly is an ADTS. Facebook objects to my consideration of the Snyder declaration. Oppo. at 19-21. Snyder's factual assertions regarding the operation of Facebook's system – as relevant to this motion – are reiterated as factual allegations in the proposed SAC, the truth of which I assume. However, consideration of the Snyder Declaration does not lead to a different outcome.

3

In *Hufnus*, as here, the plaintiff relied heavily on footnote 7 of *Duguid* to argue that systems using a "generator" (*e.g.*, algorithm) to place and store preexisting phone numbers in a random or sequential order for later calling qualifies as an ATDS. Judge Chhabria rejected that argument because: (i) there was no evidence in his case that the "preproduced list" referenced in the Court's footnote was in his case "itself created through a random or sequential number generator" but was instead simply a list of customers who had provided their numbers to donotpay; (ii) the donotpay system (and any system that calls numbers provided by consumers seeking services) was wholly unlike the concerns underlying the enactment of the TCPA (random or sequential number generators reduced the capacity of the recipients' phone systems); and (iii) donotpay's system was more akin to systems deemed not to qualify as ATDS under *Duguid* because its system simply "targets phone numbers that were obtained in a non-random way." *Id*. at *1.

The same holds true here, despite Brickman's emphasis that Facebook's automated algorithm operates without human intervention and results in blast emails to hundreds of thousands of users. *See* Reply at 5. Fundamentally, even assuming the truth of Brickman's allegations regarding the methodology used by Facebook to select, store, and blast-send the birthday text messages, the numbers called were not randomly or sequentially generated; they were pulled from an existing list. Even if pulled and then ordered "randomly or sequentially" by an algorithm and stored for later use, there are no facts plausibly suggesting "stor[ing of] a telephone number using a random or sequential *generator* or to produc[ing] a telephone number using a random or sequential number *generator*." *Duguid*, 141 S. Ct. at 1167 (emphasis added).

Other cases have adopted the same interpretation of *Duguid* and rejected plaintiff's proposed expansion of the *Duguid's* footnote 7 to achieve a result untethered to the Supreme Court's actual holding in *Duguid* and untethered to the purposes underlying the TCPA. Most recently, in *Tehrani v. Joie De Vivre Hospitality, LLC*, 19-CV-08168-EMC, 2021 WL 3886043, at *3 (N.D. Cal. Aug. 31, 2021), the Hon. Edward M. Chen of this District rejected a similar theory; namely that "the 'number generator' need only generate an *index* number which is then assigned to *preexisting* phone numbers." *Id*. *3 (emphasis in original). Judge Chen rejected that

4

argument because: (i) as a textual matter, the "'number generator' (whether random or sequential) specified in § 227(a)(1)(A) implicitly refers back to a 'telephone number[ ]' – i.e., the preceding phrase – and not to an index number"; (ii) the Supreme Court in *Duguid* addressed a split in circuit authority between the circuits that required the number to be called to have been sequentially or randomly generated and the Ninth and Second Circuits (that required the ATDS only to have the capacity to store numbers to be called and to dial such numbers automatically) and in "rejecting the Second and Ninth Circuit holdings, the Supreme Court implicitly rejected" the index theory; and (iii) the index theory "makes little sense when one takes into account the harms that the TCPA was intended to address." *Id*. at *4. Following the "clear majority of cases," including *Hufnus*, Judge Chen dismissed the case because there was no dispute that plaintiff had provided defendant with his phone number and, therefore, the call was the result of a pre-existing list and a random of sequential number generator could not have been used. *See also id*. at *5 (addressing footnote 7 from *Duguid* and concluding "that the 'preproduced list' was not some kind of pre-existing list but rather a list of phone numbers that was generated by a number generator").

In *Franco v. Alorica Inc*, 2021 WL 3812872 (C.D. Cal. July 27, 2021), plaintiff alleged she received calls to collect a debt. That court too, adopted "the *Hufnus* approach. When a defendant randomly makes calls from a curated list, it is not randomly or sequentially generating phone numbers. Therefore, under the Supreme Court's definition of an ATDS announced in Facebook—equipment that 'uses a random or sequential number generator'—that defendant is not using an ATDS and cannot be liable under § 227 of the TCPA." Id. at *3. The "SAC fails to allege Defendant randomly or sequentially generated her phone number. Instead, like the plaintiff in *Hufnus*, Plaintiff had a pre-existing relationship with Defendant: Plaintiff allegedly owed a debt, and Defendant was calling to collect. [] It would be wildly implausible for Defendant to randomly or sequentially generate phone numbers in the hopes of reaching the Plaintiff-debtor. Instead, the much more plausible explanation is that Plaintiff provided her creditor with her phone number as part of taking out the loan, and Defendant used this voluntarily provided number to collect. It is immaterial whether Defendant "randomly" selected Plaintiff's phone number from its list of debtors." *Id*. at *3; *see also Borden v. eFinancial, LLC*, C19-1430JLR, 2021 WL 3602479, at *5

5

(W.D. Wash. Aug. 13, 2021) (agreeing that following *Duguid*, the ATDS must have the capacity to use and used "a random or sequential number generator to generate the phone numbers in the first instance" and excluding from scope of statute a system that sent "advertisement text messages to consumers who entered their phone numbers into a form on its website" and distinguishing footnote 7 from *Duguid* as "the preproduced list of phone numbers referenced in footnote 7 was itself created through a random or sequential number generator, thus differentiating it from the stored list of consumer-provided phone numbers used by eFinancial."); *Watts v. Emergency Twenty Four*, No. 20-CV-1820, 2021 WL 2529613, at *3 (N.D. Ill. June 21, 2021) (dismissing TCPA claims because the dialing equipment at issue placed calls to specific individuals from an existing list of phone numbers, suggesting the numbers were not randomly or sequentially generated); *Barry v. Ally Fin., Inc.*, 2021 WL 2936636, at *4 (E.D. Mich. July 13, 2021) (dismissing where "[p]laintiff does not dispute that Defendant's autodialer system did not use a random or sequential number generator in connection with its calls to her (or to the purported class members). Rather, these calls were targeted at specific individuals in connection with specific accounts held by Defendant. That ends this case.").[3]

I recognize that some courts have considered the determination of whether a plaintiff has plausibly shown the use of an ATDS covered by *Duguid* to be more appropriately resolved on summary judgment than at the pleading stage. But in many of those cases, the plaintiffs alleged that they had *never* provided defendant with their phone numbers in the first place, making it at least plausible that a prohibited number generator had been used to produce or store the numbers called. *See Gross v. GG Homes, Inc.*, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021) (concluding, consistent that the "newly clarified definition of an ATDS is more relevant to a

---

[3] Following the oral argument on this motion, Facebook asked me to take notice of supplemental authority. Dkt. Nos. 147, 150 [seeking notice of *Franco v. Alorica, Inc.*, 2021 WL 3812872 (C.D. Cal. July 27, 2021); *Tehrani v. Joie de Vivre Hospitality, LLC*, 2021 WL 3886043 (N.D. Cal. Aug. 31, 2021)]. Plaintiff likewise filed a motion for leave to file a statement of recent decision, as well as a comment on those recent decisions that "these recent decisions confirm Plaintiff's position that the facts regarding these matters differ from case to case." Dkt. No. 148 [seeking judicial notice of *Gross v. GG Homes, Inc.*, 2021 WL 2863623 (S.D. Cal. July 8, 2021); *Miles v. Medicredit, Inc.*, 2021 WL 2949565 (E.D. Mo. July 14, 2021)]. The motions for leave to file, Dkt. Nos. 147, 148 are GRANTED. I have considered each of the cases brought to my attention by both parties.

summary judgment motion than at the pleading stage," but also noting that there was no allegation or evidence that plaintiff had provided her number to defendant); *Miles v. Medicredit, Inc.*, 2021 WL 2949565, at *4 (E.D. Mo. July 14, 2021) (the "Court agrees with Plaintiff that the 'newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage'" in a case where the calls were placed to plaintiff's number in an effort to collect a debt allegedly owed by an unknown third-party); *see also Montanez v. Future Vision Brain Bank, LLC*, 2021 WL 1697928, at *2 (D. Colo. Apr. 29, 2021) (deferring issue to summary judgment, where defendant contended plaintiff had voluntarily provided her number to defendant, yet none of the messages received were "addressed specifically to Plaintiff."); *Jance v. Homerun Offer LLC*, 2021 WL 3270318, at *4 (D. Ariz. July 30, 2021) (allowing TCPA case to proceed past motion to dismiss stage, where "Plaintiff alleges he had no business relationship with Defendants, did not give Defendants his contact information, and did not consent to be contacted by Defendants").

I agree with Brickman that each case has to be addressed on its own alleged facts. Here, considering the facts Brickman alleges in his proposed SAC that I take as true, Brickman fails to plausibly allege the use of a prohibited ATDS following *Duguid*. Therefore, his motion for leave to file the proposed SAC is DENIED as futile.

## CONCLUSION

For the foregoing reasons, the motion for leave to file the proposed SAC is denied.

The parties shall meet and confer to discuss how this litigation should now proceed – for example, should Facebook formally move for judgment (whether through a summary judgment or some other vehicle) or can the parties stipulate to a judgment based on my interpretation (preserving for Brickman's right to appeal)? The parties are ordered to report back on their meet-and-confer efforts within a week of the date of this Order.

**IT IS SO ORDERED.**

Dated: September 15, 2021



William H. Orrick
United States District Judge

8